# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3207

FRANK BROS., INC.,

*Plaintiff-Appellant,*

v.

WISCONSIN DEPARTMENT OF TRANSPORTATION,
FRANK BUSALACCHI, Secretary, and MARILYN
KUICK, Chief EEO/Labor Compliance,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 C 0083—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED FEBRUARY 12, 2004—DECIDED JUNE 3, 2005

———————

Before CUDAHY, COFFEY, and ROVNER, *Circuit Judges.*

COFFEY, *Circuit Judge.* Plaintiff-appellant Frank Bros.,
Inc., ("Frank Bros.") appeals an order of the district court
dismissing their complaint seeking a declaratory judgment
and injunctive relief against the Wisconsin Department of
Transportation, Frank Busalacchi, Secretary, and Marilyn
Kuick, Chief EEO/Labor Compliance for failure to state
a claim upon which relief could be granted pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the

district court, Frank Bros. unsuccessfully argued that provisions of the Davis-Bacon Act, 40 U.S.C. §§ 3141-3148, and the Federal-Aid Highway Act, 23 U.S.C. §§ 101, *et seq.*, preempt application of Wisconsin's prevailing wage law, Wis. Stat. § 103.50, to truck drivers who perform transportation and delivery work pursuant to joint federal-state highway contracts. We affirm.

## I. BACKGROUND

Frank Bros. is a construction company with its principal place of business in Janesville, Wisconsin. In 2002, Frank Bros. entered into two separate contracts with the Wisconsin Department of Transportation ("WisDOT") agreeing to act as a subcontractor on road construction projects in Rock County, Wisconsin. Under these contracts, which were funded by capital from both federal and state agencies through the provisions of the Federal-Aid Highway Act ("FHWA"), 23 U.S.C. §§ 101, *et seq.*, Frank Bros. agreed to procure and transport various aggregates, *e.g.*, limestone and other materials, to the construction sites. Frank Bros. was also responsible for hauling recycled materials away from the job sites. In accordance with the transportation obligations created under the contracts, Frank Bros. hired a number of independent trucking contractors and subcontractors to haul the aggregate materials to and from a commercial quarry owned and operated by Frank Bros.

The two highway construction contracts that Frank Bros. entered into with the WisDOT required that the company comply with all state and federal laws applicable to federally funded highway construction projects. *See* 23 U.S.C. § 114. Also, pursuant to federal law, both contracts incorporated the terms of the Davis-Bacon Act, 40 U.S.C. §§ 3141-3148, which requires that contractors and subcontractors on federal construction projects pay qualified employees (as defined below) the prevailing wage rate for their job classification

as determined by the Secretary of Labor. *See* 40 U.S.C. § 3142(b); 23 U.S.C. § 113; 23 C.F.R. § 633.102. In order to demonstrate compliance with the terms of the Davis-Bacon Act, contractors and subcontractors subject to the Act's prevailing wage provisions, such as Frank Bros., are required to submit weekly payroll records to the Department of Labor disclosing the wages paid and hours worked by covered employees. *See* 29 C.F.R. § 5.5(a)(3).

Not all persons performing work related to a federally funded construction project will fall within the scope of the Davis-Bacon Act's prevailing wage and reporting requirements. Qualified employees under the Davis-Bacon Act include, "laborers and mechanics," 40 U.S.C. § 3142(b), employed on the site of federally assisted building projects (either by contractors or subcontractors) performing tasks such as "[a]ltering, remodeling, [and] installation." 29 C.F.R. § 5.2(j)(1)(i). Specifically excluded from the Act are contractors and subcontractors, or employees thereof, engaged in "the transportation of materials or supplies to or from the site of the work." 29 C.F.R. § 5.2(j)(2) (citing *Bldg. & Constr. Trades Dep't AFL-CIO v. United States Dep't of Labor Wage App. Bd.*, 932 F.2d 985 (D.C. Cir. 1991)). Thus, under the Davis-Bacon Act, Frank Bros. properly concluded that they were not required by federal law to pay prevailing wages to subcontractors or employees of subcontractors working as truck drivers.

However, in addition to complying with mandatory federal prevailing wage laws, subcontractors on joint federal and state construction projects are also required to abide by the laws and regulations of the various states in which they are performing work. In a number of states, including Wisconsin, this means adhering to supplemental state prevailing wage laws, sometimes referred to as the "little Davis-Bacon Acts." *See generally*, A. Thieblot, PREVAILING WAGE LEGISLATION: THE DAVIS-BACON ACT, STATE "LITTLE DAVIS-BACON" ACTS, THE WALSH-HEALEY ACT, AND THE

Service Contract Act 21-135 (1986). The same year that the Davis-Bacon Act was enacted by the United States Congress, the State of Wisconsin followed suit and passed its own prevailing wage laws, which remain in place today in substantively the same form as when they were enacted in 1931. Wis. Stat. §§ 66.0903 (municipal projects), 103.49 (state projects), 103.50 (highway projects). The Wisconsin statute defines the State's "prevailing wage rate" as "the hourly basic rate of pay, plus the hourly contribution for [fringe benefits] . . . paid directly or indirectly, for a majority of the hours worked in the trade or occupation in the area." Wis. Stat. § 103.50(1)(d). The prevailing wage in Wisconsin for a particular class of workers is determined on a project-by-project basis by the Wisconsin Department of Workforce Development ("DWD"), which shall "conduct investigations and hold public hearings" to assist in defining the job classifications necessary for a given project as well as the appropriate wage minimums for those jobs. § 103.50(3). The prevailing wages determined pursuant to § 103.50 by the Wisconsin DWD thus may or may not be identical to the federal wage rate determined by the United States Secretary of Labor under the Davis-Bacon Act.[1]

---

[1] As stipulated in a supplemental contract provision in the highway construction agreement entered into between Frank Bros. and the WisDOT, "[i]n the event the [prevailing wage rates under Wis. Stat. § 103.50 and the Davis-Bacon Act] are not identical, the higher of the two rates will govern." This makes good sense considering § 113 of the FHWA states "laborers and mechanics employed by contractors or subcontractors on [federally funded highway projects] . . . shall be paid at rates not less than those prevailing on the same type of work on similar construction in the immediate locality as determined by the [United States] Secretary of Labor in accordance with [the Davis-Bacon Act]." 23 U.S.C. § 113. Thus, if the Wisconsin DWD were to set a prevailing wage for workers that was lower than that set by the Secretary of Labor

(continued...)

More importantly though, Wisconsin's prevailing wage enactment, unlike the Davis-Bacon Act and the regulations promulgated thereunder, expressly provides that "[a]ll laborers, workers, mechanics and *truck drivers* employed," on public works projects shall be paid the prevailing wage determined by the DWD. Wis. Stat. § 103.50(2m)(a)(2) (emphasis added). Thus, while the federal government does not provide for a prevailing minimum wage rate for truck drivers performing work on federally funded state highway projects, the State of Wisconsin expressly requires that truck drivers rendering services such as hauling materials to and from federally funded construction projects in Wisconsin be paid the state mandated prevailing wage. Like the Davis-Bacon Act, § 103.50 of the Wisconsin Statutes must be incorporated into all WisDOT highway construction contracts, Wis. Stat. § 103.50(6), meaning the contracts Frank Bros. entered into require compliance with both the federal and state prevailing wage schemes.

Confronted with this legislative and contractual scenario, Frank Bros. chose to comply fully with the federal prevailing wage requirements, but did not pay—or require its subcontractors to pay—the prevailing wage required under Wisconsin law to truck drivers employed in hauling limestone and other aggregates from the Frank Bros. quarry to the job sites. Frank Bros. also failed to comply with Wisconsin law by not providing the required (weekly) supporting

---

[1] (...continued)

under the provisions of the Davis-Bacon Act, Wisconsin's prevailing wage law would clearly be preempted due to the fact that it would be physically impossible for an employer to comply with both federal and state law. *See California Fed. Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987). However, as we hold today, this is not the case where a state's wage rate is set higher than the federal rate or when additional classes of workers are covered under state law.

payroll documentation to the WisDOT (such as the wages paid and number of hours worked by truck drivers employed either directly or indirectly on the project).

Having learned of this situation, Marilyn Kuick, Chief of the EEO/Labor Compliance Bureau for the WisDOT, ordered Frank Bros. to immediately comply with Wisconsin law. In a letter dated January 15, 2003, Kuick directed the company to begin paying all truck drivers employed in hauling materials to and from the construction sites Wisconsin's prevailing wage rate. The letter further instructed Frank Bros. to comply with the reporting provisions of § 103.50, provide the required weekly payroll information and, if necessary, pay any back wages to those workers who might have been paid less than the State's prevailing wage while working on the project. Kuick explained the rationale of her order by stating that the WisDOT would apply the definition of "covered employees" in Wis. Stat. § 103.50, which includes truck drivers, instead of the narrower definition found in regulations implementing federal law.

On February 19, 2003, Frank Bros. filed suit in the United States District Court for the Western District of Wisconsin. The company sought a declaratory judgment and injunctive relief against the WisDOT and other named defendants pursuant to the Davis-Bacon Act, 40 U.S.C. §§ 3141-3148, the Federal-Aid Highway Act, 23 U.S.C. §§ 101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. In essence, Frank Bros. claimed that Wisconsin's prevailing wage statute is preempted by federal law and that WisDOT is thus precluded from requiring that truck drivers be paid the prevailing wage mandated under Wis. Stat. § 103.50.

Shortly after the complaint was filed, but before discovery had commenced, the defendants-appellees moved to dismiss pursuant to Rule 12(b)(6) claiming that Frank Bros. had failed to state a claim upon which relief could be granted.

*See* FED. R. CIV. P. 12(b)(6). The district court granted WisDOT's motion, finding that Frank Bros. had failed to demonstrate that anything in the Davis-Bacon Act or related federal legislation precluded the State of Wisconsin from placing additional wage rate requirements on subcontractors working on joint federal and state highway construction projects. We affirm.

## II. DISCUSSION

The district court dismissed the defendants-appellees' complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted, a question of law which we review *de novo. See Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914, 916 (7th Cir. 2004). Dismissal is only appropriate if the plaintiff cannot possibly establish any set of facts which would entitle him to the relief requested. *See Hunt-Golliday v. Metro. Water Reclamation Dist.*, 390 F.3d 1032, 1034 (7th Cir. 2004). For purposes of this appeal we accept as true all of the well-pleaded allegations in Frank Bros. complaint and will draw all reasonable inferences in their favor. *See Thomas*, 392 F.3d at 916.

### A.  Federal Preemption Doctrine

The sole issue presented on appeal is whether the federal prevailing wage scheme, which expressly exempts truck drivers from its scope of coverage, preempts Wisconsin's prevailing wage law, which specifically includes truck drivers.

Under the Supremacy Clause of the United States Constitution, U.S. CONST., art. VI, state law may be preempted by federal legislation either by "express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and*

*Dev. Comm'n*, 461 U.S. 190, 203-04 (1983)). Although state legislation may be preempted by federal provisions in a number of ways, we presume that, in all circumstances, "Congress does not intend to supplant state law." *Travelers Ins. Co.*, 514 U.S. at 654. This is particularly true where a party claims that federal law bars state action in areas of traditional state regulation, such as public works. *See Meditronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *see also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997). In such cases preemption shall not be found absent evidence that it was Congress' "clear and manifest purpose [to do so]." *Rush Prudential HMO v. Moran*, 536 U.S. 355, 365 (2002); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

### 1. Express Congressional Intent

Although Frank Bros. does not argue that Wisconsin's prevailing wage law is expressly preempted by federal law, "we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *Travelers Ins. Co.*, 514 U.S. at 655. There is nothing in the statutory text of the federal statutes at work here which would lead us to conclude that it was the intention of Congress to expressly override either complementary or inconsistent state laws. The Davis-Bacon Act, 40 U.S.C. § 3146, states that the Act is "not [to be construed to] supersede or impair any authority otherwise granted by federal law to provide for the establishment of specific wage rates," but is silent on the subject of interaction with state legislation. Likewise, the FAHA "contains no statement about its effect on either federal or state statutes." *Siuslaw Concrete Constr. Co. v. Wash. Dep't of Transp.*, 784 F.2d 952, 955 n.3 (9th Cir. 1986).

When interpreting the text of a statutory provision for preemptive intent we assume that the ordinary meaning of the language used by Congress accurately reflects the legislative purpose. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Congress' failure to expressly state, one way or the other, whether the Davis-Bacon Act and/or the FHWA are meant to preempt state law, prevents us from holding that Wisconsin's prevailing wage law has been expressly preempted, a determination that is only possible where Congress has expressed a clear intent to override state law.[2] *See, e.g.*, *Louisiana Pub. Serv. Comm'n v. Fed. Communications Comm'n.*, 476 U.S. 355, 368 (1986); *Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (7th Cir. 1995). Nevertheless, state law may also be supplanted when, absent an express statement of legislative intent, "Congress' command is . . . implicitly contained in [an Act's] structure and purpose." *Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1971)).

---

[2] Indeed, as discussed *infra*, provisions in both the Davis-Bacon Act and the FHWA suggest that Congress intended a scheme of complementary state/federal legislation. For example, 23 U.S.C. § 114(a) provides that "labor in each State shall be performed . . . in accordance with the laws of that State and applicable Federal law." In addition, we pause to note that prior to the passage of the Davis-Bacon Act in 1931 seven states had some form of prevailing wage legislation on the books. Armand J. Thieblot, Jr., *Prevailing Wage Laws of the States*, 4 Gov. Union Rev. 1, 5 (Fall 1983). The Supreme Court has made clear that Congress' silence regarding the preemption of preexisting state laws may aid the court in concluding that Congress did not intend to preempt those state laws. *See Dillingham*, 519 U.S. at 329-31; *Camps New-found/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 616 (1997).

2.  Implicit Preemption

Frank Bros.’ first claim on appeal is that congressional legislation, in the form of the Davis-Bacon Act, as incorporated by the FHWA, is so pervasive that it leaves no room for the State of Wisconsin to impose its own prevailing wage scheme. Thus, Frank Bros. concludes that the State of Wisconsin is precluded from enforcing its prevailing wage legislation and accordingly may not require Frank Bros. to pay a state prevailing wage to truck drivers in the company’s (and its subcontractor’s) employ. The appellants base this claim primarily on the following allegations: (a) that “Congress specifically addressed how wages should be set on federally funded highway contracts in 23 U.S.C. § 113 by stating that wages shall be paid “in accordance with . . . the Davis-Bacon Act”; and (b) that “there is a lack of any other specific statutory reference that permits or authorizes a state to impose its prevailing wage scheme on federally funded highway contracts.” Appellant’s Brief at 24. We disagree.

In this country, it is a long-standing principle of law that, in the absence of explicit language signaling preemptive intent, the manifest purpose of Congress to preclude the application of State law may also be evinced by either a “scheme of federal regulation . . . so pervasive to make reasonable the inference that Congress left no room for the States to supplement it,” or the passage of an Act that “touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.” *Rice*, 331 U.S. at 230.

As noted above, the establishment of prevailing wage rates and labor standards for indigenous workers is an area of traditional state regulation. *See Dillingham*, 519 U.S. at 330; *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987). Therefore, it is Frank Bros.’ burden to establish, in

the context of field preemption, that it was the clear "manifest purpose of Congress" to preclude the states, and specifically Wisconsin, from enacting their own prevailing wage legislation. *Rice*, 331 U.S. at 230. However, both the text of the federal statutes involved and the legislative history of the Davis Bacon-Act and the FHWA, as well as regulations promulgated pursuant to those laws, demonstrate that this is not the case.

The statutory language of both the Davis-Bacon Act and the FAHA both suggest that Congress intended federal law to be complementary to, rather than preclusive of, state law. The Davis-Bacon Act was initally enacted in 1931 during the Hoover administration and mandates that a "prevailing wage" determined by the Secretary of Labor be paid to those employees who perform various qualified tasks for contractors on federal public works projects.[3] *See* 40 U.S.C. § 3142.[4] And we note that some of the most striking and convincing evidence of congressional intent can be found in the text of the Davis-Bacon Act itself.

If Congress had intended to supplant more stringent state legislation it is unlikely that they would have characterized the federal prevailing wage as the "*minimum wages* to be paid various classes of laborers and mechanics." 40 U.S.C.

---

[3] It should be noted, however, that over the years the Davis-Bacon Act has been amended many times and, as a result, contains many nuances that the bill passed in 1931 did not. *See generally* Lisa Morowitz, *Government Contracts, Social Legislation, and Prevailing Woes: Enforcing the Davis Bacon Act*, 9 IN. PUB. INT. 29, 32 (1989).

[4] As Representative Bacon stated, the Davis-Bacon Act was intended to discourage "certain itinerant, irresponsible contractors, with itinerant, cheap, bootleg labor . . . [from] 'picking' off a contract here and a contract there," and to "simply give local labor and the local contractor a fair opportunity to participate in this building program." 74 Cong. Rec. 6510 (1931).

§ 3142(a) (emphasis added). The use of the word minimum in the statute, in and of itself, is strong evidence of a congressional intention to have the statute read as complementary to state legislation. There is no doubt that congressional lawmakers were aware of their inherent authority to legislatively preempt state authority in the field by making the federal wage rate mandatory and preclusive of state (or employer) supplementation, however, the text of the statute itself establishes that they chose not to do so. *See Hillsborough v. Automated Medical Labs, Inc.*, 471 U.S. 707, 718 (1985). Instead, when crafting the Davis-Bacon Act, Congress chose the word "minimum" to benefit workers (for whom the legislation was passed) and allowed for the payment of higher wages if the states, the market or individual employers concluded that supplemental wages were in order.

Indeed, the broader federal law requiring that all workers, regardless of job classification, be paid a "minimum wage" has long been an area of the law which is governed by a complementary web of federal and state legislation, and there is no reason to believe that Congress did not envision that the same system would operate with respect to the Davis-Bacon Act as well. *See, e.g.*, 29 U.S.C. §§ 201-209 (entitled the "Fair Labor Standards Act"). This conclusion is consistent with the fact that, like the Davis-Bacon Act, the federal minimum wage was part of comprehensive legislation aimed at mitigating the financial damage done to the working class in the United States during the Great Depression. *See generally* William P. Quigley, '*A Fair Day's Pay For a Fair Day's Work': Time to Raise and Index the Minimum Wage*, 27 St. Mary's L.J. 513, 515-29 (1996). The only substantive difference between the federal minimum wage law and the Davis-Bacon Act in this context is that Congress saw fit to include an express non-preemption clause in the Fair Labor Standards Act. *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order

thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter. . . ."). Nonetheless, the fact that Congress did not expressly reserve the right of the states to set a minimum prevailing wage for workers taking part in public works projects does not support the conclusion that the states do not maintain that right.

Additional guidance as to congressional intention not to preempt state regulation in the field is provided by the FHWA, which implements the Davis-Bacon Act in conjunction with all federally funded state highway projects. A comprehensive analysis of the FHWA demonstrates that Congress both understood state involvement in setting and maintaining prevailing wages and sought the states' cooperation in facilitating the enforcement of the Davis-Bacon Act. Moreover, there is nothing in the FHWA which suggests that Congress intended the Davis-Bacon Act or the FHWA to preclude supplemental wage rate legislation by the states in the form of either a higher prevailing wage or the payment of a prevailing wage to a broader variety of workers.[5] For example, the FHWA provides in part that "all laborers and mechanics employed by contractors or subcontractors . . . shall be paid wages at rates *not less than* those prevailing on the same type of work on similar construction in the immediate locality as determined by the Secretary of Labor *in accordance with* . . . [the Davis-Bacon Act]." 23 U.S.C. § 113 (emphasis added).

Frank Bros. attaches great importance to the words "in accordance with" in the statute and argues that § 113, by its

---

[5] In terms of the FHWA, a number of courts have held that because participation in the FHWA is at the states' option, it cannot be said that Congress intended to preempt the field and preclude supplementary state decision making. *Siuslaw Concrete Constr. Co.*, 784 F.2d at 953.

very terms, establishes Congress' intention to preempt inconsistent state prevailing wage laws where the Davis-Bacon Act is applicable. However, this argument is misguided for a number of reasons. First, § 113 merely assures that the mandatory provisions of the Davis-Bacon Act, such as the payment by contractors of a prevailing minimum wage to certain covered employees, will be adhered to on federally funded highway contracts, but does not in any manner or respect alter, much less limit, the ability of states to require that contractors abide by supplemental state prevailing wage regulations. Support is found for this proposition in another provision in the FHWA which expressly states that "construction work and labor in each State shall be performed *under the direct supervision of the State transportation department and in accordance with the laws of that state and applicable federal laws.*" 23 U.S.C. § 114 (emphasis added).[6] Instead of precluding supplemental state regulation, as Frank Bros. suggests, the language employed in the FHWA embodies Congress' intention to provide legal authority to and encourage cooperation between State and Federal regulators in order that they might achieve similar results in accomplishing the goals of the Davis-Bacon Act. Furthermore, § 113 of the FHWA requires the Secretary of Labor to "consult [as directed by the regulations] with the highway department of the State in which a project . . . is to be performed . . . [and] [a]fter giv-

---

[6] Frank Bros. argues unpersuasively that the phrase " . . . and applicable federal laws" in § 114 is evidence of Congress' intention to make state law subordinate to federal law with respect to state prevailing wage laws. The problem with this reading of the statute, as discussed *infra*, is that if Congress intended to control the field there would be no need to refer to applicable state laws. Indeed, a fair reading of the statute reveals Congress' contemplation of state law and intention not to supplant or in anyway disturb existing state law where there is no "applicable federal law." 23 U.S.C. § 114.

ing due regard to the information thus obtained, he shall make a predetermination of the minimum wages to be paid laborers and mechanics." 23 U.S.C. § 113(b).[7] Such consultation would be unnecessary and perhaps undesirable if, as Frank Bros. contends, Congress had intended to exercise plenary power over prevailing wage determinations.[8] *See Dillingham*, 519 U.S. at 330. Indeed, in *California Division of Labor Standards Enforcement v. Dillingham*, another Davis-Bacon Act case that dealt with ERISA preemption of the California prevailing wage scheme, the Supreme Court cited Congress' express direction to the Secretary of Labor to cooperate with state agencies engaged in formulating and promoting apprenticeship standards as persuasive evidence that California's prevailing wage scheme was not preempted by ERISA. *See id.* (citing 29 U.S.C. § 50).

Moreover, nothing in either the legislative history of the Davis-Bacon Act or the FHWA supports Frank Bros.' contention that Congress intended to preempt broader prevailing minimum wage requirements implemented by the states. As the Supreme Court acknowledged for the first time over fifty years ago: "The language of the [Davis-

---

[7] While it is true, as Frank Bros. asserts, that the Secretary of Labor has the authority to set the Federal prevailing wage without regard to applicable state regulations, this fails to add anything to their cause; for as 23 U.S.C. § 114 states on its face, contractors are to comply with both the laws of the state in which they are performing the work *as well as* applicable federal laws.

[8] This conclusion is also bolstered by 23 U.S.C. § 145 which provides in pertinent part: "(a) Protection of State sovereignty.— The authorization of the appropriation of Federal funds or their availability for expenditure under this chapter shall in no way infringe on the sovereign rights of the States to determine which projects shall be federally financed. **The provisions of this chapter provide for a federally assisted State program**." § 145 (emphasis added).

Bacon] Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by *fixing a floor under wages on* Government projects." *United States v. Binghamton Const. Co.*, 347 U.S. 171, 177 (1954) (emphasis added). Support for this assertion is pervasive and most compelling. For example, when Congress enacted the Davis-Bacon Act in 1931 seven states had already adopted prevailing wage statutes, many of which had disparate requirements, provided for higher prevailing wage calculations and contained different worker coverage than their later adopted federal counterpart. *See* Armand J. Thieblot, Jr., *Prevailing Wage Laws of the States*, 4 Gov. Union Rev. 1, 5 (Fall 1983); *see also Dillingham*, 519 U.S. at 329-31; *Camps Newfound/Owatonna, Inc.*, 520 U.S. at 616. Also, there are currently thirty states that have some form of prevailing wage legislation for public works projects, and most of those contain categories of covered employees or prevailing wage rates which differ from the Davis-Bacon Act, *i.e.*, some states require that a prevailing wage be paid to one or more classifications of employees that are not covered under the Davis-Bacon Act.[9] *See Dillingham*, 519

---

[9] Those states are: ALASKA STAT. § 36.05.010 (Alaska); ARK. CODE ANN. §§ 22-9-301, 22-9-303 (Arkansas); CAL. LAB. CODE §§ 1770, 1720.3 (California); CONN. GEN. STAT. § 31-53 (Connecticut); DEL. CODE ANN. tit. 2, § 2003 (2004) (Delaware); HAW. REV. STAT. ANN. § 104-2 (Hawaii); 820 ILL. COMP. STAT. ANN. 130/1, 130/2 (Illinois); IND. CODE ANN. § 5-16-7-1 (Indiana); KY. REV. STAT. ANN. § 337.010 (Kentucky); ME. REV. STAT. ANN. tit. 26 §§ 1304-1305 (Maine); MD. CODE ANN., STATE FIN. & PROC. § 17-213 (Maryland); MASS. GEN. LAWS ch. 149, § 27F (Massachusetts); MINN. STAT. ANN. § 177.41 (Minnesota); MO. ANN. STAT. §§ 290.220, 290.230 (Missouri); MONT. CODE ANN. §§ 18-2-401, -402 (Montana); NEB. REV. STAT. ANN. § 71-6018.02 (Nebraska); NEV. REV. STAT. ANN. §§ 332.390, 338.020 (Nevada); N.J. STAT. ANN. §§ 34:11-56.25, -56.26 (New Jersey); N.M.

(continued...)

U.S. at 329-31. As stated above, if in fact it was the intent of Congress to preempt such competing state regulation in the field, there is no doubt that they were acutely aware of how to accomplish that goal. *See, e.g.*, *Hillsborough*, 471 U.S. at 718. Again, the decision not to do so is evidence of Congress' primary goal in passing the Davis-Bacon Act in the first place, which was not to supplant state regulations in the area, but to insure that, in states with prevailing wage legislation, "contractors [on public works projects would] not pay [workers] less than is paid in private industry." 75 Cong. Rec. 6515 (1931) (statement of Rep. Kopp).

The proposition that Congress, at least implicitly, intended to allow for supplemental and even more aggressive state regulation, is also supported with compelling evidence that the federal government is well aware of, and even comfortable with, the fact that some of the "little Davis-Bacon Acts," such as Wisconsin's prevailing wage law, impose more stringent requirements (*i.e,* higher prevailing wages and additional categories of covered employees) on contractors and subcontractors than those mandated by the Davis-Bacon Act. For example, a great number of states have prevailing wage legislation in place that mandates that worker classifications, such as truck drivers—employees that are not qualified employees under the Davis-Bacon Act—be paid a state prevailing wage. *See supra* note 9 and accompanying text. More importantly, aside from Wiscon-

---

[9] (...continued)

STAT. ANN. § 13-4-11 (New Mexico); N.Y. LAB. LAW § 220 (New York); OHIO REV. CODE ANN. § 4115.04 (Ohio); OKLA. STAT. ANN. tit. 40, § 197 (Oklahoma); 62 PA. CONS. STAT. ANN. § 3901 (Pennsylvania); R.I. GEN. LAWS § 37-13-6 (Rhode Island); TENN. CODE ANN. § 12-4-402 (Tennessee); TEX. GOV'T CODE ANN. §§ 2258.001, 2258.002 (Texas); WASH. REV. CODE. ANN. § 39.12.020 (Washington); W. VA. CODE ANN. § 21-5A-2 (West Virginia); and WIS. STAT. § 103.50 (Wisconsin).

sin, at least three other states specifically include truck drivers as one of the classes of contractor employees that must be paid the prevailing wage under state law. *See, e.g.*, CAL. LAB. CODE § 1720.3 ("public works' also means the hauling of refuse from a public works site to an outside disposal location"); MASS. GEN. LAWS ch. 149, § 27F ("No agreement of lease, rental, or other arrangement . . . under which a truck or any automotive or other vehicle or equipment is to be engaged in public works . . . shall be entered into or given by any public official or public body unless said agreement, order or requisition contains a stipulation requiring prescribed rates of wages, as determined by the commissioner, to be paid said truck drivers"); *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus. of Wash.*, 112 Wash. App. 291, 298-303 (Wash. Ct. App. 2002) (finding that most truck drivers are covered under WASH. REV. CODE § 39.12.020).

However, even if it were reasonable for Frank Bros. to suggest that Congress is oblivious of this legislation, the record suggests that—at the very least—the Federal Highway Administration is well aware that certain states have enacted legislation that is supplementary to the Davis-Bacon Act. In 1985 the Federal Highway Authority proposed a rule which would have allowed the Federal Highway Administrator to decline funding to highway contracts that are too costly due to "design, materials or labor costs." 50 Fed. Reg. at 39137-39139, *withdrawn at* 54 Fed. Reg. at 34529. This rule would have imbued the FHWA with the discretion to refuse to use federal funds to finance the excess costs of labor in states, such as Wisconsin, where either the prevailing wage calculation is greater than that of the Secretary of Labor or where state legislation requires the payment to additional classifications of workers (not covered under the Davis-Bacon Act) such as truck drivers. The rule was eventually withdrawn, but the text of the proposed regulation offers valuable insight into the Federal

Highway Administration's interpretation of the interaction between state laws and the Davis-Bacon Act; for the proposed rule states that, in the Administration's opinion "neither the Davis-Bacon Act nor 23 U.S.C. [§] 113 preempts State law." *Id.* Although not binding precedent, the courts "have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984). The fact that the Federal Highway Administration, the agency charged with arranging and approving federal highway contracts as well as implementing the Davis-Bacon Act on those projects, has never challenged these alleged inconsistencies between federal and state law (and even stated in the federal record that the Davis-Bacon Act did not preempt state legislation in the field) certainly weighs in favor of a conclusion that the field has not been occupied by federal legislation and regulation.

Essentially the only evidence that Frank Bros. relies upon in support of their argument for field preemption is Congress' silence as to the application or existence of state prevailing wage laws.[10] However, silence on the part of Congress alone is not only insufficient to demonstrate field

---

[10] Frank Bros. incorrectly asserts that "[w]hen Congress has enacted protective labor legislation that intrudes upon the historic police powers of States, the traditional pattern followed by Congress has been to specifically assert in the legislation that the States retain these police powers, if Congress wishes the States to retain those powers." Appellant's Brief at 28. A quick read of the United States Constitution reveals that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively. . . ." U.S. CONST. amend. X. In addition, as mentioned earlier, in spheres of traditional state regulation the courts will presume that Congress did not intend to supercede state law. *See supra* pp. 11-12; *Rice*, 331 U.S. at 230.

preemption, it actually weighs in favor of holding that it was the intent of Congress *not* to occupy the field. *Hillsborough*, 471 U.S. at 718 (holding that the courts "can expect that [Congress and/or agencies] . . . will make their intentions clear if they intend for their regulations to be exclusive"); *Camps Newfound/Owatonna, Inc.*, 520 U.S. at 616 (holding that "even where Congress has legislated in an area subject to its authority, our pre-emption jurisprudence explicitly rejects the notion that mere congressional silence on a particular issue may be read as preempting state law").

To illustrate the point further, this is not a situation akin to the one encountered by the Supreme Court in *Guss v. Utah Labor Board*, which Frank Bros. cites as support for its argument that the Davis-Bacon Act preempts state prevailing wage laws. 353 U.S. 1 (1957). In *Guss*, the Supreme Court held that, by promulgating the National Labor Relations Act, Congress granted the National Labor Relations Board ("NLRB") plenary power "to prevent any person from engaging in any unfair labor practice." *Id.* at 3-12. The Court reasoned that under § 10(a) of the National Labor Relations Act, the only manner in which the states would have jurisdiction over labor disputes covered under the Act would be where their power to deal with those disputes was ceded by the NLRB. *Id.* at 5-12. In other words, the Court concluded that Congress had intended that the NLRB would be vested with jurisdiction over all labor disputes affecting commerce and that this constituted "not only a general intent to pre-empt the field," but also implied exclusiveness on the part of the Board to act at the behest of Congress on such matters. *Id.* at 10. Thus, a declination on the part of the Board to exercise its jurisdiction did not allow the states to step in when exclusive jurisdiction was vested in the Board. *Id.* at 10-12.

*Guss* is distinguishable, for in this case we are not dealing with a plenary grant of power by the Congress to the Secretary of Labor. As we have illustrated, although the

Davis-Bacon Act grants the Secretary the power to determine a minimum prevailing wage, nothing in the act even implies exclusivity. Whereas in *Guss* the Court needed look no further than the statute itself to determine that Congress had "meant to reach to the full extent of its power under the Commerce Clause," in passing the National Labor Relations Act. *Id.* at 3. Congress did not exercise its power in this manner when enacting the Davis-Bacon Act, although they certainly had the power to do so. The fact that Congress did not exercise plenary power when enacting the Davis-Bacon Act, especially when confronted with supplementary legislation in the field, demonstrates Congress' intention that the Davis-Bacon Act coexist with state regulation rather than preempt it. *See Hillsborough*, 471 U.S. at 718. In addition, contrary to Frank Bros.' argument, Congress had not "left unregulated" any area of labor disputes affecting commerce under the National Labor Relations Act. *Guss*, 353 U.S. at 3. In fact, as we pointed out earlier, the Supreme Court held in *Guss* that Congress had invested the NLRB with exclusive, plenary power over labor disputes. *Id.* at 10. The Davis-Bacon Act confers no such authority to the Secretary of Labor, and thus the states are free to act as long as their regulations do not otherwise interfere with congressional intent.

Because we are not satisfied that the Davis-Bacon Act, as incorporated by the FHWA, evinces the clear and "manifest purpose of Congress" to implement a scheme of legislation so pervasive[11] that it would, in effect, preempt any state

---

[11] Frank Bros. also claims that the determination of how workers are to be categorized and/or paid on federally funded highway projects is of such significant interest to Congress that the federal interest in regulating such matters is so dominant as to preempt all state laws touching on the same subject. As support for this argument Frank Bros. cites the amount of money spent by the

(continued...)

regulation in the field, we conclude that the State of Wisconsin is free to require compliance with its own prevailing wage scheme, as long as that legislation is not in conflict with federal law or prevents the full purposes and objectives of Congress from being carried out.[12]

---

[11] (...continued)
federal government (billions of dollars each year) on state highway projects. They therefore argue that the states are precluded from raising the price of labor on joint federal/state highway projects by imposing supplementary prevailing wage schemes.

However, this argument is unpersuasive because: "[u]ndoubtedly, every subject that merits congressional legislation is, by definition, a subject of national concern. That cannot mean, however, that every federal statute ousts all related state law." *Hillborough*, 471 U.S. at 719. For example, state legislation on the subject of national security and foreign affairs has been held implicitly pre-empted because "Congress has legislated in an area of paramount federal importance." *Mite Corp. v. Dixon*, 633 F.2d 486, 493 (7th Cir. 1980) (citing *Pennsylvania v. Nelson*, 350 U.S. 497 (1956) (national security); *Hines v. Davidowitz*, 312 U.S. 52 (1941) (foreign affairs)). However, the wage rates for certain employees of government contractors cannot be considered an area of such significant national concern that it would be treated along the lines of either legislation in the realm of national security or foreign affairs. Indeed, if this were the case, it would follow that every piece of legislation, from state minimum wage laws to local highway laws, might conceivably be preempted by federal law because they, in some way, impact the federal budget, regardless of whether those laws fall within the traditional sphere of state regulation. *Hillborough*, 471 U.S. at 719; *see supra* pp. 12-13.

[12] Even if we were to assume that the legislative scheme of the Davis-Bacon Act (and the Federal-Aid Highway Act) was comprehensive in its field, comprehensiveness does not always justify preemption. *Hillsborough*, 471 U.S. at 717. "In *New York Dept. of Social Services v. Dublino*, 413 U.S. 405 (1973), the Supreme Court stated that '[the] subjects of modern social and regulatory
(continued...)

[12] (...continued)
legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem.'" *Hillsborough*, 471 U.S. at 717 (quoting *N.Y. Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 415 (1973)). Therefore, "merely because the federal provisions were sufficiently comprehensive to meet the need identified by Congress did not mean that States and localities were barred from identifying additional needs or imposing further requirements in the field." *Hillsborough*, 471 U.S. at 717 (citing *De Canas v. Bica*, 424 U.S. 351 at 359-60 (1976)).

As far as the particular Davis-Bacon Act regulation at question here pertaining to truck drivers, 29 C.F.R. § 5.2, is concerned, it would be too broad a sweeping inference to suggest that Congress intended to preempt an area of traditional state regulation on the basis of a *single* administrative regulation promulgated by a federal agency. *See Favel v. American Renovation and Constr. Co.*, 59 P.3d 412, 425 (Mont. 2002) ("We conclude, as did the U.S. Supreme Court in *Geier*, 529 U.S. 861 at 908-09, 120 S.Ct. 1913, that regulatory preemption will not be implied absent some declaration of an intent to preempt. Such a declaration being absent here, we find no implied preemption in the Davis-Bacon regulations."). Although both federal regulations and statutes may preempt state law, the courts are more reluctant to infer preemption from the text of federal regulations as opposed to statutes. *Hillsborough*, 471 U.S. at 717.

> As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence. *See Jones v. Rath Packing Co.*, 430 U.S. at 525. . . . Thus, if an agency does not speak to the question of preemption, we will pause before saying that
> (continued...)

### 3. Conflict Preemption

Frank Bros. argues, in the alternative, that by incorporating the Davis-Bacon Act into the FHWA, it was the intention of Congress to comprehensively regulate the type of wages paid and the manner in which those wages were determined. Thus, they argue that, by also setting forth the wages to be paid and to whom they are to be paid, Wisconsin's prevailing wage law conflicts with federal law. For the most part this is simply an extension of their implied preemption argument and is likewise unpersuasive.

Conflict preemption occurs only in those circumstances where "compliance with both federal and state regulations is a[n] . . . impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California Fed. Savings & Loan Ass'n*, 479 U.S. at 281; *Crosby*, 530 U.S. at 372-73 (citations omitted); *La. Pub. Serv.*, 476 U.S. at 368-69; *de La Cuesta*, 458 U.S. at 153; *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Time Warner Cable*, 66 F.3d at 875.

The appellants initially argue that the application of Wisconsin's prevailing wage rate to truck drivers conflicts with the implementation and intent of the federal scheme. Specifically, they argue that because delivery drivers on construction projects are expressly excluded under regulations promulgated pursuant to the Davis-Bacon Act and

---

[12] (...continued)
the mere volume and complexity of its regulations indicate that the agency did in fact intend to pre-empt.

*Hillsborough*, 471 U.S. at 717-18. This court would be reticent to infer the Department of Labor's intent to preempt a state prevailing wage law under these circumstances; for it is true that "[federal agencies] will make their intentions clear if they intend for their regulations to be exclusive." *Id.* at 718.

incorporated by the FHWA, Congress intended that truck drivers are to be paid at "free market rates" when working for subcontractors on federal highway projects. Appellant's Brief at 18. The appellants go on to assert that "the State of Wisconsin has contradicted this free market philosophy . . . , by concluding that they should be paid governmentally set rates." Appellant's Brief at 18-19. We disagree.

In order to determine whether state law constitutes an obstacle to the accomplishment of the purposes and objectives of Congress we will "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written," and "mere differences between state and federal regulation of the same subject are not conclusive of preemption . . . the crucial inquiry is whether [state law] differs from [federal law] in such a way that achievement of the congressional objective . . . is frustrated." *Mite Corp.*, 633 F.2d at 493; *California v. ARC America Corp.*, 490 U.S. 93, 100-01 (1989); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963); *Motor Vehicle Mfrs. Ass'n of United States v. Abrams*, 899 F.2d 1315, 1322 (2d Cir. 1990). In other words, the mere fact that two statutes differ is not conclusive evidence of preemptive effect. *See id.* Thus, in this case, Frank Bros. must allege facts or cite empirical evidence that would establish that the congressional objective at work behind the enactment of the Davis-Bacon Act and the FHWA would either be frustrated or rendered ineffective if Wisconsin mandates that a prevailing wage be paid to truck drivers.

As mentioned above, the Davis-Bacon Act and the regulations promulgated pursuant to that statutory enactment provide for a detailed web of legislation which, at its heart was "designed for the benefit of . . . workers." *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 771 (1981) (quoting *Binghamton Const. Co.*, 347 U.S. at 178). The Supreme Court

has specifically held that "[t]he language of the act and its legislative history plainly show that it was not enacted to benefit contractors, but rather protect their employees . . . by fixing a floor under wages on Government projects." *Binghamton*, 347 U.S. at 176-77. A conclusion which is also well supported in the legislative history of the Act. *See* 75 Cong. Rec. 6515 (1931) (statement of Rep. Kopp) (This bill "simply insist[s] that Government shall not use its power to demoralize the rates in places where public buildings are constructed. Nothing could be fairer. Nothing could be more just and equitable. This is a policy to which no one can take exceptions.").

In addition, subsequent to the Supreme Court's decision in *Binghamton*, the Court has gone on to hold that contractual agreements between employers and employees do not frustrate the purposes of the Davis-Bacon Act where the agreed upon compensation is greater than the floor established by the Davis-Bacon Act. *See Walsh v. Schlecht*, 429 U.S. 401, 411 (1977) (holding "that the objective of the Davis-Bacon Act is to benefit the contractor's employees, and that objective is clearly not "frustrated" when contractual arrangements between employers and their employees result in higher compensation and benefits than the floor established by the Act"). And it is well-settled that where a federal statute provides only a floor, such a statute does "not stand in the way of a stricter standard that the laws of some States provide." *Atherton v. Federal Deposit Insurance Corp.*, 519 U.S. 213, 227 (1997).

It is most disingenuous for Frank Bros. to argue that Wisconsin's decision to pay a prevailing wage to a category of workers which the federal government has chosen to exclude "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California Fed. Savings & Loan Ass'n*, 479 U.S. at 281. This is because, looking no further than the text of the Act itself, it is clear that the purpose of the law is to ensure that

workers engaged in public works projects be paid the same rate as those employed in private industry in the locality in which they are employed, whether or not this happens to be the "market rate" as Frank Bros. characterizes it.[13] *See* 40 U.S.C. § 3142. The Wisconsin statute in question, Wis. Stat. § 103.50, has the same intent and effect, except for the fact that it affects an expanded segment of employees. In order to follow Frank Bros.' logic here, we would have to conclude that it was the objective of Congress to actually harm truck drivers by excluding them from the purview of the Davis-Bacon Act, thereby allowing them to be paid wages less than the prevailing wage in any particular locality. Said differently, if Frank Bros.' theory is correct and the "full purpose and objectives of Congress" would be frustrated if they are required under Wisconsin law to pay truck drivers no less than a prevailing wage, they must be arguing that Congress and the Secretary of Labor intended for truck drivers to earn—at least in some instances—*less* than a prevailing wage when performing work in conjunction with a federally funded highway project. Such an assertion makes little sense, either constitutionally or in terms of the Davis-Bacon Act.

Instead, it would be more logical and accurate to conclude that, responding to judicial precedent holding that Congress

---

[13] Of course, if the free market price of labor is higher in a given locality than what either the Secretary of Labor or the WisDOT determines the prevailing wage to be, contractors may be required to pay workers more given their individual circumstances. As we have already discussed, the Davis-Bacon Act was intended to set a "floor" on labor prices, and we have not been presented with any evidence suggesting the federal law prohibits either the State of Wisconsin or the free market from setting the price of labor higher in a certain locality. If Frank Bros. has a problem with the economic sense of the state regulation, perhaps that is an issue that should be taken up with the Wisconsin legislature.

had not intended to include off-site truck drivers as covered workers when the Davis-Bacon Act was passed, *see Building and Constr. Trades Dept., AFL-CIO v. United States Dept. of Labor Wage Appeals Bd.*, 932 F.2d 985, 989-92 (D.C. Cir. 1991), the Department of Labor, to avoid further litigation on the matter, decided to make a rule bringing the law into conformity with that court decision.[14] In any case, whether or not Congress intended to exclude truck drivers from the protections of the Davis-Bacon Act, Congress' goal—to protect local construction employees— may still be fully realized while Wisconsin chooses to pay truck drivers a state defined prevailing wage. Were this court to hold that Wisconsin was precluded from requiring that truck drivers are paid a minimum wage, we would not be advancing the goals of Congress in any meaningful way; indeed, we may even be doing damage to those objectives. *See supra* pp. 18-23.

In an effort to bolster their claim that conflict preemption should prohibit operation of Wisconsin's prevailing wage law Frank Bros. cites a Northern District of New York decision, *FHM Constructors, Inc. v. Village of Canton Housing Authority*, No. 91-CV-0065, 1993 WL 23587 (N.D.N.Y. 1993), and a New York Supreme Court decision, *Majstrovic v.*

---

[14] Prior to the decision in *Building and Construction Trades Department, AFL-CIO*, it was an open question as to whether truck drivers employed by government contractors were covered by the Davis-Bacon Act or not. *See Zachry Co. v. United States*, 344 F.2d 352, 361 (Ct. Claims 1965). We should note that although delivery drivers may, at one time, have been covered under the Davis-Bacon Act, there is no guarantee that Wisconsin's prevailing wage would have been identical to the federal prevailing wage. This certainly would not have posed a constitutional problem, for as the Supreme Court has instructed and the history and text of the Act bear out, the Act merely imposes a minimum wage for workers, which acts as a floor that the states are free to augment upward at their discretion. *See supra* pp. 18-23.

*R. Maria Piping Inc.*, 655 N.Y.S.2d 285 (N.Y. Sup. Ct. 1997) for the proposition that the Davis-Bacon Act, as incorporated by the United States Housing Act, 42 U.S.C. § 1437j, preempts New York's prevailing wage law. However, *FHM* and *Majstrovic* are distinguishable. The court in *FHM* was deciding whether state legislation which set higher wages than the Davis-Bacon Act was contrary to the purposes and intent of Congress under the United States Housing Act, not the Davis-Bacon Act. *FHM Constructors, Inc.*, 1993 WL 23587, at *10. In addition, during the time between the completion of the construction project in question and the filing of the complaint the Department of Housing and Urban Development ("HUD") had passed a "Final Rule" which expressly preempted New York's prevailing wage law. *Id.* at *6. Although the court found that the regulation was inapplicable, it did consider it when arriving at its decision that New York's prevailing wage law was preempted by the Housing Act. *Id. Majstrovic* was decided on essentially the same grounds and, for the same reasons explained below, is likewise inapplicable to this case.[15] *Majstrovic*, 655 N.Y.S.2d at 287-88.

The *FHM* and *Majstrovic* cases do nothing to sway our opinion that Wis. Stat. § 103.50 does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The Federal Highway Administration does not have an express preemption rule like the one adopted by HUD. In addition, in a proposed

---

[15] The court in *Majstrovic* also held that the federal Davis-Bacon Act preempted state prevailing wage rate schedules for purposes of federally funded housing projects. This case does not help Frank Bros.' argument either, because HUD explicitly preempted the state law which set higher prevailing wage rates, while the FHWA includes no such clause. *Majstrovic*, 655 N.Y.S.2d at 286.

rule the Administration *did state* that "neither the Davis-Bacon Act nor 23 U.S.C. [§] 113 preempts State law." 50 Fed. Reg. at 39137-39139, *withdrawn at* 54 Fed. Reg. at 34529. Although the rule never became final, the Administration's own statement about the construction of an Act which it administers is afforded considerable weight. *Chevron, U.S.A., Inc.*, 467 U.S. at 844.

Finally, Frank Bros. claims that it is "physically impossible" to comply with both Wisconsin's prevailing wage law and federal law. This argument is a red herring. It is not "physically impossible" for Frank Bros. to comply with the Davis-Bacon Act, the FHWA and the Wisconsin statute. As we have noted earlier, the Davis-Bacon Act merely sets a "floor" for the prevailing wage to be paid workers on federally funded public works. Also, it is true that according to regulations promulgated by the Department of Labor, truck drivers are specifically excluded from coverage under the Act. However, what Frank Bros. misunderstands is that there is nothing in the Davis-Bacon Act which specifically or expressly *prohibits* paying truck drivers a prevailing wage. Instead, the regulations merely articulate the idea that "the transportation of materials or supplies to or from the site of work by employees of the construction contractor or a construction contractor is not 'construction, prosecution, completion or repair,'" within the meaning of the Davis-Bacon Act. 29 C.F.R. § 5.2.

The same is true for the FHWA. Section 113 of the FHWA provides that all qualified "laborers and mechanics" working on Federal-aid funded projects are to be paid "not less than" the prevailing wage as determined by the Secretary of Labor in accordance with the Davis-Bacon Act. 23 U.S.C. § 113. Again, it is true that the Davis-Bacon Act regulation expressly excludes delivery drivers from the definition of "laborers and mechanics," 29 C.F.R. § 5.2, but, 23 U.S.C. § 114, makes it clear that all construction work performed

in each state "shall be performed under the direct supervision of the State transportation department and in accordance with the laws of that State . . . ." 23 U.S.C. § 114. State law, here Wisconsin law, therefore merely supplements the federal scheme by ensuring that truck drivers are also paid a prevailing wage determined by the Wisconsin Department of Workforce Development. *See* Wis. Stat. §§ 103.50(2m)(1) and (4).

Wisconsin's prevailing wage legislative scheme is supplemental in nature and thus there is nothing barring Frank Bros. from complying with both federal and state law in this case. Neither federal law nor the regulations under the Davis-Bacon Act prohibit contractors, like Frank Bros. from paying a prevailing wage to truck drivers; they are merely excluded from coverage under the Davis-Bacon Act. This is an area of traditional state regulation and as such the State of Wisconsin is free to set whatever wage it likes for whatever category of worker it considers worthy, as long as that regulation does not enter into a field occupied by federal legislation and does not conflict with that legislation. We conclude that federal law does not prohibit Frank Bros. from paying the State's prevailing wage to truck drivers, and thus it is not "physically impossible" for them to comply with both federal and state law in this instance.

### III. CONCLUSION

Because we hold that it was not the clear and manifest purpose of Congress to preempt supplementary state regulation in the area of prevailing wage rates and because we find nothing in Wisconsin's prevailing wage law which conflicts with federal legislation, the decision of the district court is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*