No. 2--06--0394        Filed:  3-28-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ILLINOIS LANDSCAPE CONTRACTORS ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05--MR--842 |
| THE DEPARTMENT OF LABOR, ART LUDWIG, as Director of the Department of Labor, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY AND ITS AFFILIATED LOCAL UNIONS, JAMES P. CONNOLLY and FRANK RILEY, as Officers of the Construction and General Laborers' District Council of Chicago and Vicinity, and OMAR CONTRERAS, as a Member of the Construction and General Laborers' District Council of Chicago and Vicinity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) ) | Honorable Edward Duncan, Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

On July 8, 2004, plaintiff, the Illinois Landscape Contractors Association (ILCA), petitioned defendant, the Department of Labor (DOL), to create a new job classification for landscape workers pursuant to the Prevailing Wage Act (820 ILCS 130/1 et seq. (West 2004)).  Presently, landscape workers are included in the laborer classification.  After a hearing in March 2005, the administrative law judge (the ALJ) for DOL issued its June 8, 2005, decision, dismissing ILCA's petition.  On July

11, 2005, ILCA filed its complaint for administrative review, naming DOL; Art Ludwig, as the Director of DOL; the Construction and General Laborers' District Council of Chicago and Vicinity and its affiliated local unions, James P. Connolly and Frank Riley, as its officers, and Omar Contreras, as a member (collectively the Laborers' Union). The circuit court affirmed the ALJ's decision on March 8, 2006, and ILCA now appeals, arguing that the ALJ erred in its ruling that landscape workers are properly classified as laborers because landscape workers perform work that is similar to work performed by laborers. We affirm.

## I. BACKGROUND

### A. The Parties

ILCA is an association of more than 500 landscape contractors. The Laborers' Union is a union representing laborers employed by over 2,000 construction contractors and has entered into a collective bargaining agreement (the Labor CBA) with those contractors. Defendants Connolly and Riley are officers of the Laborers' Union, and defendant Contreras is a member of the Laborers' Union. DOL is the department of the State of Illinois charged with administering and enforcing the Prevailing Wage Act (820 ILCS 130/1 et seq. (West 2004)).

### B. ILCA's Petition to DOL

In May 2004, a bargaining unit of 581 employees of Illinois landscaping contractors voted to select its union, and chose joint representation by the Local 150 of the Operating Engineers union and the Teamsters' Local 703 (Locals 150 and 703) over the Laborers' Union. At the time of the hearing held in March 2005, over 80 Illinois landscape contractors had entered into collective bargaining agreements with Locals 150 and 703 (the Landscape CBA). Of those landscape contractors covered by the Landscape CBA, 40% to 45% worked on public works projects subject

to the Prevailing Wage Act. Unlike the Labor CBA, the Landscape CBA adopted a separate class and separate wage schedule for landscape workers, including wages up to $15.62 per hour.

In June 2004, DOL published its annual prevailing wage schedules for Illinois counties, including those for the eight counties at issue in this case: Cook, Du Page, Grundy, Kane, Kendall, Lake, McHenry, and Will. In each of those wage schedules, landscape work was included in the laborer job classification. In the schedule, the prevailing wage for laborers working on public projects subject to the Prevailing Wage Act was $36.72 per hour in wages and benefits. The United States Department of Labor (USDOL) also had a classification for plantsmen, and those workers were paid $10.20 per hour in wages and benefits for federal projects in Du Page County.

On July 8, 2004, ILCA petitioned DOL and objected to the existing laborer classification for landscape work. ILCA sought three new classifications for landscape workers, arguing that landscape work is dissimilar to the work of general laborers and that such dissimilarity warrants separate classifications. Specifically, ILCA sought to have separate classifications established that recognized "lead plantsman, plantsman, and landscape installer" positions.

ILCA's petition described the work of a plantsman to include the following responsibilities: "assisting lead plantsmen in performing such tasks as installing and utilizing plant materials; tree trimming and brush removal; utilization of liquid and dry fertilizers and chemicals; landscape excavation; soil cultivation; weeding; sodding; construction of retaining walls; exterior decking work; erosion control work; stream bank stabilization work; installation of playground equipment and other landscape structures; installation of decorative lighting; the placing of soil and other landscape materials; applying finish landscape materials on subgrade prepared by others; loading and unloading equipment from trucks; and other

miscellaneous functions pertaining to general landscape operations on new or existing construction sites."

The work of a plantsman also includes:

"operating such non-seated equipment as sod cutters, sod rollers, walk behind sod installers, chain saws, air compressors, and water pumps 2 inches or less, but it does not include running any trucks (other than pick-up trucks and trucks transporting personnel) and motorized equipment customarily operated by landscape operators (except for the purpose of training or filling in for lead operator/operator vacations); bricklaying, including the non-mechanized laying of, cutting of, and/or decorative arrangement of bricks; irrigation pipe work, including but not limited to the laying of, installation of and/or assembly of irrigation pipe; or the operation of trenching and other equipment used in the installation of irrigation systems."

ILCA described the work of a "lead plantsman" to include all work performed by plantsmen and, additionally, the "responsibility for directing the work of plantsmen and installers on landscaping projects." Landscape installers perform the following work: "the non-mechanized laying of, mechanized cutting of and/or non-mechanized decorative arrangement of paving bricks; building of retaining walls; and the non-mechanized laying of, installation of and/or assembly of irrigation pipe." Installers may also perform the functions of a plantsman.

ILCA's petition requested a hearing pursuant to section 9 of the Prevailing Wage Act (820 ILCS 130/9 (West 2004)) to establish the new classifications and wage rates that reflect the actual prevailing wage for each type of work.

C. Prevailing Wage Act

The relevant portions of the Prevailing Wage Act are as follows. Section 1 declares the policy of the Prevailing Wage Act:

"It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works." 820 ILCS 130/1 (West 2004).

Section 3 of the Prevailing Wage Act states in relevant part:

"Not less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed *** shall be paid to all laborers, workers and mechanics employed by or on behalf of any public body engaged in the construction of public works." 820 ILCS 130/3 (West 2004).

Section 4(e) states the following:

"Two or more investigatory hearings under this Section on the issue of establishing a new prevailing wage classification for a particular craft or type of worker shall be consolidated in a single hearing before the Department. *** The party requesting a consolidated investigatory hearing shall have the burden of establishing that there is no existing prevailing wage classification for the particular craft or type of worker in any of the localities under consideration." 820 ILCS 130/4(e) (West 2004).

Section 9 of the Prevailing Wage Act governs DOL's duties to investigate wages annually and the filing of objections. In relevant part, section 9 provides as follows:

"To effectuate the purpose and policy of this Act each public body shall, during the month of June of each calendar year, investigate and ascertain the prevailing rate of wages ***. ***

* * *

*** [A]ny person affected thereby may object in writing to the determination *** by filing a written notice with the public body or Department of Labor, whichever has made such determination, stating the specified grounds of the objection. It shall thereafter be the duty of the public body or Department of Labor to set a date for a hearing on the objection ***. ***

*** At such hearing the public body or Department of Labor shall introduce in evidence the investigation it instituted which formed the basis of its determination, and the public body or Department of Labor, or any interested objectors may thereafter introduce such evidence as is material to the issue. Thereafter, the public body or Department of Labor, must rule upon the written objection and make such final determination as it believes the evidence warrants, and promptly file a certified copy of its final determination ***. " 820 ILCS 130/9 (West 2004).

D. The Administrative Hearing

On March 7, 2005, DOL conducted a hearing on ILCA's petition for three new classifications (lead plantsman, plantsman, and landscape installer) and wage schedules. The following evidence, in relevant part, is derived from that hearing.

DOL's manager of the Conciliation and Mediation Division, Michael D. Kleinik, testified for DOL. Two prior ALJ decisions, one in 1996 and one in 2000, provided parameters for ascertaining

rates and classifications. Those decisions held that landscape work was included in the current classification system and that a new class was not needed. Further, those decisions stated that in determining prevailing wages, DOL can consider only public work hours and not private hours. DOL also cannot consider USDOL determinations, because USDOL uses both public and private hours when it determines federal wages pursuant to the Davis-Bacon Act (40 U.S.C. §3141 et seq. (2006)). Under DOL's current classification system, landscape work is included in three classes: laborers, operating engineers, and truck drivers. Mr. Kleinik did not believe that the skills and knowledge described for the proposed classes were so dissimilar to warrant separate classifications. He believed the same tools, skills, and knowledge are involved in general laborer tasks as in landscaping tasks. According to Mr. Kleinik, in determining what classifications for laborers should be established, DOL looks to collective bargaining agreements that have been established by the laborers in the relevant localities because "the Department feels that they're more qualified to say what a laborer does."

DOL next called Carla Pulley, a certifying officer with the Conciliation and Mediation Division of DOL. In her position, Ms. Pulley ascertains the prevailing wages for the construction trades and publishes the wage schedules. DOL does not have a definition of "laborer." The definition of "laborer" is derived from the scope of work defined in the Labor CBA, which is used to ascertain wages. If a collective bargaining agreement is submitted to DOL containing new classifications, DOL does not automatically recognize such classifications. New classifications are recognized by DOL after a hearing or through a consent finding. In the past, DOL also performed surveys to determine wage rates and classifications, but it no longer conducts such surveys. The last survey was in 2001. If two different unions submit different wage information, DOL would accept

the wage rates from the union that DOL has historically relied on. In this case, DOL has traditionally accepted wage information from the Laborers' Union. When there are subclasses, the relevant class is determined by the type of equipment used, rather than the type of work, because different skills are required with different types of equipment.

ILCA presented its executive director, Patricia Cassady. Ms. Cassady described ILCA's functions. ILCA, an organization comprised of over 500 landscape contractors, primarily focuses on education and provides training for the national certifying landscape technician exam. Training programs cover various topics, including plant information, proper planting techniques, pruning, plant types, equipment use, and safety. ILCA also provides regulatory and legislative information to its members. Any individual with work experience may take the exam.

On cross-examination, Ms. Cassady admitted that ILCA members have never provided ILCA with evidence of hours they have spent working on projects subject to the Prevailing Wage Act. She also did not know what percentage of ILCA members performed public works projects subject to the Prevailing Wage Act. ILCA is not involved with any union contract negotiations. Further, members of ILCA are not required to participate in any of its training programs. Ms. Cassady admitted that it is possible to acquire the skills and knowledge offered in ILCA training programs through on-the-job training. Individuals performing the functions of the proposed classifications are not required to complete the national certifying exams.

Wesley James, a laborer conciliator with DOL, testified for ILCA next. As a labor conciliator, Mr. James investigates Prevailing Wage Act complaints. Mr. James estimated that, between July 2003 and July 2004, he investigated approximately 30 underpayment complaints involving landscape workers. The range of wages involved in the complaints was $6 per hour to $29

per hour. Mr. James was familiar with the job titles of "plantsman" and "lead plantsman" but not with "installer." He was not sure which particular unions were involved with underpayment complaints or which unions used the title of "plantsman" or "lead plantsman." The work encompassed by those titles, including "filling in voids with soil, putting in sod, planting trees and shrubs, doing earth moving," was consistent with the work encompassed by the laborer classification.

Leo Connors, a DOL labor conciliator, testified as follows. Mr. Connors investigated approximately 25 landscaping-related Prevailing Wage Act complaints between July 2003 and July 2004. Approximately 95% of the complaints were initiated by the Laborers' Union, and the range of underpayment wages was $8 to $35 per hour. Based on his experience, Mr. Connors stated that the work of a landscaper falls within DOL's laborer classification. The testimony of another DOL investigator, Robert Wesselhoff, was consistent with the testimony of Mr. James and Mr. Connor.

Randy Dalton, the director of organizing for the Laborers' Union, testified for ILCA next. In his position, Mr. Dalton assists locals in contract enforcement and negotiates contracts personally. The Laborers' Union has over 2,000 contracts signed with contractors involved with landscaping work. Mr. Dalton explained that when "[p]eople say landscaping and they think of planting a tree and laying sod, and as far as we are concerned, landscaping is the same as what a construction laborer does all of the time, from building forms, pouring concrete, running skidsters, shooting grade. We see landscapers doing all of this." Landscape contractors have consistently performed work performed by other labor contractors, crossing many boundaries into other trades.

Carlos Villalpando, a business agent and organizer for the Local 150 union, testified as follows. Mr. Villalpando's responsibilities include representing and organizing landscaping companies, and he spends a significant amount of time at public and private jobsites. After Locals

150 and 703 were elected to represent landscape workers, the Landscape CBA was negotiated, recognizing the proposed classifications. Approximately 40% to 45% of the contractors (approximately 28 contractors) that are parties to the Landscape CBA perform state work subject to the Prevailing Wage Act. On cross-examination, Mr. Villalpando admitted that landscape workers may acquire the skills and knowledge necessary to perform landscape work through on-the-job training. This line of questioning went through numerous tasks performed by landscape workers and included in the descriptions of ILCA's proposed classifications. Most tasks, depending on their complexity, can be learned in one to three seasons of work. Mr. Villalpando admitted that he had witnessed what he considered a laborer perform the tasks of landscape workers. He also was aware that some construction companies would perform a mix of both general construction and landscape work.

ILCA next presented Sigmund Richard Pincus, an attorney who represents the landscape industry. Mr. Pincus represented the Illinois Landscape Contractors' Bargaining Association (ILCBA) in contract negotiations with unions. ILCBA has no affiliation with ILCA. ILCBA's contracts included separate classes for landscape workers that are similar but not identical to ILCA's proposed classes. Mr. Pincus explained that prior to the election of Locals 150 and 703 in 2004, the Local 707 union for production workers represented landscape workers. The Local 707 collective bargaining agreement included a class for landscape construction employees. The Local 707 agreement became a nullity when Locals 150 and 703 took over and created the Landscape CBA. Mr. Pincus negotiated the Landscape CBA and admitted that the landscape work covered by the former Local 707 agreement was now covered under the Landscape CBA.

The Laborers' Union presented William Hosty, president and business agent of the Laborers' Union. Laborers perform many tasks on construction projects, including landscape work. Laborers acquire their skills through on-the-job training and are not required to complete a formalized apprenticeship program or other formalized training. Many tools used by laborers to perform landscape work are also used for other types of construction work and do not require specific training. Mr. Hosty stated that he was aware of projects composed of 100% landscape work that were performed by laborers. Further, workers are known as "laborers" regardless of exactly what type of labor they perform, such as landscape, bridge, scaffolding, etc.

Francisco Prez, president of Local 2 of the Laborers' Union, testified to the following. Mr. Prez visits jobsites daily, including public works projects subject to the Prevailing Wage Act. In his experience, laborers perform landscaping tasks, in addition to various construction tasks. The testimony of Mr. Prez was consistent with that of Mr. Hosty in terms of on-the-job training and the skills and knowledge required to perform laborer duties and landscaping duties. Mr. Prez also explained that there are over 2,000 signatories to the Labor CBA, and that all of the signatories perform landscape work. At the end of a project, laborers may do landscape work for beautification purposes. The hearing concluded on March 9, 2005.

On June 8, 2005, the ALJ issued the final administrative decision. The ALJ's decision included the following findings of fact and conclusions of law: (1) DOL does not update classifications annually and relied upon its existing classes when it reviewed the 2004 wage schedule; (2) DOL properly held this hearing upon ILCA's formal objection; (3) DOL's burden of proof at a hearing held pursuant to section 9 of the Prevailing Wage Act (820 ILCS 130/9 (West 2004)) is to present evidence of its investigations performed for the determination of the prevailing

wages; (4) the burden is on the petitioner to establish the need for a new class or new wage; (5) the test is whether the petitioner has proved, by a preponderance of the evidence, that the work described in the proposed classification is sufficiently dissimilar to the work performed in the existing classification; (6) the testimony presented establishes that the work of landscapers falls under the classification of "laborer" because landscapers possess the same skills and knowledge and use the same tools as laborers; (7) there was no evidence establishing the number of hours laborers spend on landscape work for public works projects; and (8) the fact that the Landscape CBA exists does not mean that DOL is obligated to recognize its new classes. The final conclusion of the ALJ was that ILCA, despite its tedious questioning of witnesses regarding the individual tasks performed by laborers and landscape workers and the skills, knowledge, and tools necessary to perform such tasks, failed to prove that the work of landscapers was dissimilar to that of laborers such that a new classification was warranted.

ILCA filed its complaint for administrative review on July 11, 2005, and the circuit court affirmed the ALJ's decision on March 8, 2006. ILCA filed its timely notice of appeal, arguing that the ALJ erred in finding the work of landscapers similar to that of the current "laborer" classification.

## II. ANALYSIS

### A. Standard of Review

The parties do not agree upon the standard of review. ILCA believes that a de novo standard should be applied because a central issue in this case is the proper interpretation of a statutory provision, namely section 9 of the Prevailing Wage Act (820 ILCS 130/9 (West 2004)). The Laborers' Union states that courts must review an agency's findings of fact against the manifest-

weight-of-the-evidence standard. Finally, DOL's brief states the standard is whether the agency's decision was clearly erroneous, because this case involves a mixed question of law and fact.

We begin by first noting that this court reviews the decision of the administrative agency, not of the trial court. Dow Chemical Co. v. Department of Revenue, 359 Ill. App. 3d 1, 20 (2005). When the issue presented contains mixed questions of law and fact, the standard of review is whether the decision was clearly erroneous.[1] Dow, 359 Ill. App. 3d at 20. Mixed questions of law and fact are those in which the issue is whether the facts satisfy a statutory standard or whether the rule of law as applied to the established facts is violated. Dow, 359 Ill. App. 3d at 22. In this case, we must determine whether the facts establish that landscaping work is dissimilar to the work of a laborer, considering section 9 of the Prevailing Wage Act (820 ILCS 130/9 (West 2004)). This is a mixed question of law and fact; therefore, the clearly-erroneous standard of review applies.

The clearly-erroneous standard of review lies somewhere between a de novo and a manifest-weight-of-the-evidence standard, but provides some deference to the agency's experience and expertise. Dow, 359 Ill. App. 3d at 22. While the agency is awarded deference, a reviewing court will reverse the agency decision when there is evidence supporting reversal and the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 393 (2001), quoting United

---

[1]The clearly-erroneous standard, rather than a bifurcated standard, applies to administrative cases involving mixed questions of law and fact in part because of the deference given to the agency's experience and expertise in interpreting its statutes. Home Depot, U.S.A., Inc. v. Department of Revenue, 355 Ill. App. 3d 370, 374 (2005).

States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). We now turn to the merits of the case.

William Shakespeare once wrote, "What's in a name? That which we call a rose by any other name would smell as sweet." W. Shakespeare, Romeo and Juliet, act 2, sc. 1. In this case, a great deal of wage-earning potential is in the name. If a landscape worker is a laborer, his prevailing wage is approximately $36 per hour in wages and benefits. But if a landscape worker is a landscape worker, his prevailing wage may decrease substantially based on ILCA's arguments. Thus, in the Prevailing-Wage-Act world, a rose called by another name may not smell nearly as sweet. The primary issue in the case at bar is whether ILCA met its burden of establishing that there is no existing prevailing wage classification for landscape workers as required by section 4(e) of the Prevailing Wage Act. The Laborers' Union and DOL argue that landscape work is covered by the existing laborer class and that ILCA failed to prove otherwise. We agree and affirm.

## B. Work of a Similar Character

ILCA first argues that DOL did not produce any evidence of an investigation into the prevailing classifications in June 2004, but we reject that argument because, under the Prevailing Wage Act, DOL is not required to annually investigate classifications, only wage rates. 820 ILCS 130/9 (West 2004). At the hearing, DOL presented evidence that it relied on the Labor CBA definitions and the 1996 and 2000 ALJ findings that landscape work is included in the laborer classification. The burden of proving that this is incorrect rests on ILCA. ILCA argues that it proved landscape work is sufficiently dissimilar to laborer work because it established that: (1) landscape workers possess different skills, knowledge, and experience, and perform different job duties; (2) a wide gap between landscape and construction laborer wage rates exists in the market; (3) USDOL

recognizes a classification for landscape workers; and (4) separate collective bargaining agreements for landscape workers exist.

Few cases analyze the phrase "work of a similar character" in detail, and no case interprets the phrase in the context of determining a new classification. In Frye v. County of Iroquois, 140 Ill. App. 3d 749 (1986), the plaintiffs objected to the defendant's prevailing wage for maintenance work. The defendant adopted a lower wage rate for bricklayers, carpenters, and other tradesmen performing maintenance work than the wage rates set for construction work. Frye, 140 Ill. App. 3d at 749. The plaintiffs filed an objection to the wage rate based on the maintenance classification, arguing that maintenance workers did not have to be paid a prevailing wage because section 2 of the Prevailing Wage Act defines "construction" as all work on public projects involving "laborers, workers or mechanics" to the exclusion of maintenance work. 820 ILCS 130/2 (West 2004).[2] The court determined that, under the Prevailing Wage Act, maintenance workers could be classified as tradesmen since their work is of a similar character and nothing in the record suggested that "the skills of a tradesman needed to perform a maintenance contract [were] equivalent to those of one who is engaged in construction." Frye, 140 Ill. App. 3d at 751. The court ultimately reversed the trial court on other grounds, specifically finding the questionnaire study used to determine the prevailing wage for tradesmen was deficient. Frye, 140 Ill. App. 3d at 751. Therefore, Frye sheds little light on what factors to consider in creating a new classification, other than stating that the court will look at the skills of the worker.

---

[2]Frye dealt with a previous version of the Prevailing Wage Act, but because the language has not changed and our analysis is unaffected, we chose to cite to the current version.

In <u>Mulligan Masonry Co. v. Martin</u>, 267 Ill. App. 3d 772, 773 (1994), the parties disagreed as to whether mason tenders using forklifts, who were classified as laborers under the Prevailing Wage Act, performed "work of a similar character" to the work of operating engineers who typically used forklifts and were paid substantially more than laborers under the Prevailing Wage Act. Thus, the parties disagreed as to what constituted "work of a similar character." <u>Mulligan</u>, 267 Ill. App. 3d at 773. The court first noted that Illinois courts have not addressed whether, in determining a worker's wage classification, the Prevailing Wage Act requires a task-by-task analysis or an inquiry into whether the work in question is customarily performed by the same kind of worker. <u>Mulligan</u>, 267 Ill. App. 3d at 774. However, because DOL did not present any evidence to refute the plaintiff's evidence that mason tenders customarily used forklifts, the court did not get into the merits of the argument and held that the trial court did not err in awarding the plaintiff summary judgment. <u>Mulligan</u>, 267 Ill. App. 3d at 774-75. Therefore, <u>Mulligan</u> also provides little guidance as to how to determine whether landscape workers are properly classified as laborers.

Without much case law to consider, we look to the Prevailing Wage Act itself. The Prevailing Wage Act provides no definition of "work of a similar character," does not provide any guidance as to how DOL should investigate and determine classifications, and does not provide any factors that DOL should consider. Therefore, we interpret the Prevailing Wage Act using general principles of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. <u>Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees</u>, 218 Ill. 2d 175, 186 (2006). The best indication of legislative intent is the language of the statute, given its plain and ordinary meaning, and considering the statute in its entirety. <u>Collinsville</u>, 218 Ill. 2d at 186.

The dictionary definition of "similar" is "having characteristics in common: very much alike: comparable," or "alike in substance or essentials." Webster's Third New International Dictionary 2120 (1986). In other situations involving similarity of jobs, courts have considered the requisite skills, training, and knowledge. See Corning Glass Works v. Brennan, 417 U.S. 188, 195, 41 L. Ed. 2d 1, 10, 94 S. Ct. 2223, 2228 (1974) (Equal Pay Act looks to equal skill, effort, responsibility, and working conditions in determining equal work); DePaoli v. Abbott Laboratories, 140 F.3d 668, 673 (7th Cir. 1998) (stating, in a case involving the Americans with Disabilities Act, that in order to determine a class of jobs, the court must look to the training, knowledge, skills, and abilities required to perform the work). We find these factors to be reasonable and consistent with the plain and ordinary meaning of the statutory language of the Prevailing Wage Act. Therefore, we will consider the facts of this case using such an analysis.

ILCA presented no evidence establishing that landscape workers possess different skills, knowledge, or abilities from those of laborers. ILCA also did not establish that landscape workers are subject to different types of training from those of laborers. ILCA's brief contends that landscape workers "need to know how to deal with live plants" and must know proper planting techniques, sod preparation, and how to construct decorative retaining walls. It contends that a laborer is not required to know this information under the Landscape CBA. However, the witnesses, including ILCA's Ms. Cassady, all testified that laborers and landscape workers acquire the skills and knowledge to perform their work through on-the-job training. None are required to obtain formalized training and none are required to pass any certifying exams. Further, the tools used for landscape work do not require additional knowledge or training, and many are simple tools available for anyone to purchase and use without special instruction. Witnesses for all parties admitted that

laborers often perform landscape work and landscape workers may perform general laborer work at times.

ILCA makes additional arguments that also fail. First, ILCA argues that forcing the State to pay higher wages for landscape work than the private sector pays is irrational. However, in Hayen v. County of Ogle, 101 Ill. 2d 413, 418 (1984), the plaintiff contractors argued that the Prevailing Wage Act was unconstitutional, in part because the State could not consider wages in private projects and thus was forced to pay higher wages than the private sector. The court stated that one of the purposes of the Prevailing Wage Act is to "assure that people working on public works projects receive a decent wage in order to secure" the State's advantage of having the "work performed under conditions which give some assurance that the work will be completed without interruptions or delay by workmen of average skill." Hayen, 101 Ill. 2d at 421. The court held that the fact that private sector wages may be lower does not render the Prevailing Wage Act irrational. Hayen, 101 Ill. 2d at 420.

The plain language of the Prevailing Wage Act defines the terms "general prevailing rate of hourly wages," "general prevailing rate of wages," or "prevailing rate of wages" as the "hourly cash wages plus fringe benefits *** paid generally, in the locality in which the work is being performed, to employees engaged in work of a similar character on public works." (Emphasis added.) 820 ILCS 130/2 (West 2004). Therefore, under Hayen and the Prevailing Wage Act, private sector wages are not to be considered.

Hayen and the Prevailing Wage Act itself present this court with a test of counterintuition, as one would think that the "prevailing wages" would reflect the average prevailing wages paid to employees on projects across the public and private sectors. Even the federal government adopts

such an interpretation, as ILCA points out. ILCA argues that USDOL's recognition of separate landscape classifications is evidence that landscape work is sufficiently dissimilar to that of the existing laborer classification, noting that USDOL pays landscape workers approximately $10 per hour. However, USDOL's recognition of landscape workers and its lower prevailing wage for such workers includes data from the public and private sectors, whereas DOL is to consider only public works data.

In this case, following the Prevailing Wage Act and Hayen leads to disjointed reasoning. Landscape workers are currently covered by DOL's laborer classification and getting paid approximately $36 per hour on public works projects. DOL cannot consider what landscape workers are paid on private sector projects in determining wages or a new classification. Therefore, even if DOL recognized this new class, it could not lower the hourly wage, because its research would be limited to the $36 per hour that landscape workers are paid on public works projects rather than the lower wages they are paid on private sector jobs. While this is counterintuitive, it is the current outcome under Hayen and the Prevailing Wage Act. Thus, we find no support for ILCA's proposition that the disparity in wages paid to public works workers and private sector workers and USDOL's recognition of landscape workers necessitate a new classification without any further evidence of dissimilarity in the work.

Finally, ILCA argues that recognition of a separate landscape classification is supported by the existence of the Landscape CBA. This argument contradicts ILCA's argument that the Labor CBA should be given no weight. We agree with DOL that ILCA cannot have it both ways. The mere existence of a collective bargaining agreement that recognizes a separate classification does not mean that DOL must accept it. Further, there was no evidence establishing that the Landscape

CBA was the dominant agreement in the industry. In fact, the record shows that the Labor CBA has over 2,000 signatory contractors while the Landscape CBA has only approximately 80 signatory contractors in total.

### III. CONCLUSION

Based on the evidence on the record, we do not believe that the ALJ's decision to uphold DOL's laborer classification was clearly erroneous. DOL and the Laborers' Union presented clear evidence that landscape workers do not possess different skills, knowledge, or abilities from those of laborers. There was no evidence establishing specialized training that landscape workers must undergo. The Labor CBA, which has more signatory contractors than the Landscape CBA, does not recognize a separate classification for landscape workers. Further, the record establishes that landscape work is performed by laborers on public works projects in the eight counties and beyond. Based on the foregoing, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

O'MALLEY and GILLERAN JOHNSON, JJ., concur.