In the

# United States Court of Appeals
### For the Seventh Circuit

No. 11-1920

BEARY LANDSCAPING, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

JOE COSTIGAN, in his official capacity as
Director of the Illinois Department of Labor,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5697—**James B. Zagel**, *Judge*.

ARGUED NOVEMBER 29, 2011—DECIDED JANUARY 31, 2012

Before POSNER and KANNE, *Circuit Judges*, and
PRATT, *District Judge*.[*]

POSNER, *Circuit Judge*. Illinois law provides that
"workers . . . employed by or on behalf of any public
body engaged in the construction or demolition of

---

[*] Hon. Tanya Walton Pratt of the Southern District of
Indiana, sitting by designation.

public works" (defined as "all fixed works constructed or demolished by any public body, or paid for wholly or in part out of public funds," 820 ILCS 130/2) shall be paid "not less than the general prevailing rate of hourly wages for work of a similar character on [nonfederal] public works in the locality in which the work is performed." 820 ILCS 130/3. The "public body awarding [the] contract" is required to determine what the prevailing wage is, 820 ILCS 130/4(a), but the Department of Labor is required to conduct annual investigations to determine the prevailing wage for each type of construction and demolition work in each locality (generally defined as a county, 820 ILCS 130/2) in which such work is being performed, and in practice the public bodies simply adopt that determination.

The Department's determination may, though only within 30 days after it is published, be challenged administratively by "any person affected" by it. 820 ILCS 130/9. If the Department rejects the challenge, the challenger can appeal to the Illinois courts. *Id.*; 735 ILCS 5/3-102; see *Hayen v. County of Ogle*, 463 N.E.2d 124, 126 (Ill. 1984); *Beary Landscaping, Inc. v. Ludwig*, 479 F. Supp. 2d 857, 862 (N.D. Ill. 2007); *People ex rel. Dep't of Labor v. Skoog Landscape & Design*, 785 N.E.2d 992, 995 (Ill. App. 2003). If an employer pays less than the prevailing wage to employees working on a nonfederal public work, the Department can sue for the underpayment on behalf of the employees and also levy a separate penalty that it retains. 820 ILCS 130/11; *Brandt Construction Co. v. Ludwig*, 878 N.E.2d 116, 121 (Ill. App. 2007).

A number of landscape contractors in eight Illinois counties who do nonfederal public-works projects involving construction tasks, such as planting trees, installing ornaments, sodding and seeding, stabilizing stream banks, and applying fertilizer and other chemicals to the soil, brought this suit against the Department. They argue that it has violated the due process clause by delegating the ascertainment of the prevailing wage for publicly financed landscape construction work to private entities, namely a labor union and the contractors with which it has a collective bargaining agreement. The district judge granted summary judgment in favor of the Department.

Landscape laborers (as distinct from operators of equipment, including trucks, used in landscape construction projects, whom we can disregard) employed by these contractors are called "plantsmen." This is an unconventional usage—"plantsman" as ordinarily understood means either an enthusiastic and knowledgeable gardener or someone who raises or sells plants commercially. But no matter. Traditionally in Illinois plantsmen in the sense of landscape laborers have been represented by the Laborers Union, which represents many other types of construction laborer as well. To determine the prevailing wage for laborers, the Department in its annual investigations simply asks the Laborers Union to certify the current wage of laborers employed in public works (by locality within Illinois) under the Union's collective bargaining agreement with construction contractors. A contractor who pays a lower wage to a worker on a public work than the wage specified in

that agreement receives a demand letter from the Department and if he doesn't comply the Department can, as we know, sue him; it may also bar him from bidding on future public contracts if he is a repeat offender. 820 ILCS 130/11a.

In 2005 the Illinois Landscape Contractors Bargaining Association signed a collective bargaining agreement with the Teamsters Union and the International Union of Operating Engineers that specified a wage for plantsmen that was substantially below the wage in the Laborers Union collective bargaining contract. The Illinois Landscape Contractors Association—a different organization from the Illinois Landscape Contractors Bargaining Association but with an overlapping membership—asked the Department to recognize plantsmen as a subclassification of laborers, having their own prevailing wage, which the association argued was the wage specified in the Teamsters/Operating Engineers collective bargaining agreement. (We shall refer to that collective bargaining agreement as the "Landscapers Contract" and the one signed by the Laborers Union as the "Laborers Contract.") The Department refused and its refusal was upheld in *Illinois Landscape Contractors Ass'n v. Department of Labor*, 866 N.E.2d 592 (Ill. App. 2007). As a result of that decision, the Department, without investigating the prevailing wage for landscape laborers employed on public works in the localities in which the plaintiffs operate, continues basing the prevailing wage for plantsmen on the wage in the Laborers Contract.

The plaintiffs refuse to pay that wage, and have been sued by the Department in state court. Those suits have been stayed, however, pursuant to 735 ILCS 5/2-619(a)(3), which authorizes such a stay if there is another action pending between the same parties that involves the same claim. The other action is this suit, in which the plaintiffs argue that by rubber-stamping the wage rate in the Laborers Contract the Department has delegated a governmental function to private entities—the union, and the employers who have signed a collective bargaining contract with the union. (The stay makes the otherwise attractive option of the federal courts' abstaining in favor of the state court's enforcement action unavailable.) The plaintiffs contend that the money that the Department is seeking from them in its state court suits is their property (which it is), and that a state that delegates the taking of private property to a private entity violates the nondelegation doctrine of constitutional law (which is sometimes true).

The doctrine as usually understood and applied, however, just forbids Congress to delegate federal legislative powers, which are vested in Congress by Article I, section 1 of the Constitution, to agencies without giving them guidance on how the delegated powers should be exercised. *Whitman v. American Trucking Associations, Inc.*, 531 U.S. 457, 472-76 (2001); *Mistretta v. United States*, 488 U.S. 361, 371-73 (1989); *National Broadcasting Co. v. United States*, 319 U.S. 190, 215-16, 225-26 (1943) (Frankfurter, J.); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States*, 367 F.3d 650, 658-59 (7th Cir. 2004). (Why guidance should make

the delegation okay is unclear, especially since the guidance is often vague or open-ended.) But nothing in the Constitution prescribes the allocation of powers within state governments, *Whalen v. United States*, 445 U.S. 684, 689 n. 4 (1980); *Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 615 and n. 13 (1974); *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 328 (7th Cir. 1991); *Straley v. Utah Board of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009); *Consolidated Edison Co. of New York, Inc. v. Pataki*, 292 F.3d 338, 346 n. 4 (2d Cir. 2002)—not even the clause guaranteeing to each state a republican form of government, Art. IV, § 4. For to be a "republic," a state or nation need not parcel out powers among different branches in any particular fashion, such as that in the federal Constitution.

But an offshoot of the constitutional nondelegation doctrine that is applicable to the states forbids them to authorize private persons to deprive other private persons of life, liberty, or property without due process of law. The standard example is a law that empowers landowners to determine, by whim, how a neighbor may use his own property. *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121-22 (1928); *Eubank v. City of Richmond*, 226 U.S. 137, 143-44 (1912); cf. *Philly's v. Byrne*, 732 F.2d 87, 92 (7th Cir. 1984); *Young v. City of Simi Valley*, 216 F.3d 807, 817-18 (9th Cir. 2000).

But the present case is remote from that example. It doesn't involve a comparable threat to property rights, given settled law that, contrary to older understandings, authorizes a good deal of "delegated" encroachment on

property rights. See *Philly's v. Byrne, supra*. A state can prescribe a minimum wage, which is bound to be based on private wage determinations, and it can require employers that have contracts with the state to pay their employees a prevailing wage, *Atkin v. Kansas*, 191 U.S. 207, 222-23 (1903); *Frank Bros., Inc. v. Wisconsin Dep't of Transportation*, 409 F.3d 880, 889-90 and n. 9 (7th Cir. 2005), which is a minimum wage determined by reference to what private employers are paying. *Parker v. Brown*, 317 U.S. 341 (1943), upheld against a variety of constitutional challenges a state program for establishing minimum prices for raisins that was administered by raisin producers. Minimum product prices are analogous to minimum wages, which are minimum prices for labor services. But in this case a state agency merely has determined that plantsmen are comparable to other laborers and so should receive the same minimum wage. That is a routine type of determination made en route to fixing a prevailing wage, and the plaintiffs have not shown that the decision in *Illinois Landscape Contractors Ass'n v. Department of Labor* that upheld the determination was unreasonable. They would not be permitted even to try to show it, in this case at any rate, because as members of the contractors association, sharing the interest of the other members in defeating the determination and represented by the same lawyer who represented the association in the landscape contractors case, they are bound by that determination. See *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 327 F.3d 173, 184-86

(2d Cir. 2003); *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1082 (9th Cir. 2003); *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233-34 (2d Cir. 1977); 18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4456, pp. 502-05 (2d ed. 2002).

Their objection, rather, is to the Department's rubber-stamping the wage in the Laborers Contract as the prevailing wage for plantsmen. Maybe plantsmen on public projects are actually paid a different wage, and that different wage is the prevailing wage for such workers.

But before the Department's determination of the prevailing wage for landscape workers became final, any party or parties affected by it, such as these plaintiffs, could object to the determination within thirty days of its posting and by doing so obtain both administrative and judicial review. The plaintiffs did not object to the determination. They argue that they couldn't because they weren't "person[s] affected" by it, not yet having bid on public landscape construction projects to which the latest annual determination of the prevailing wage (based on the wage rate in the Laborers Contract) would apply. But they *were* affected prospectively. The price they bid on such projects will be higher if they have to pay that rate, and they will probably have to post a larger surety bond as well. See 820 ILCS 130/4(c). So they will be less likely to be the low bidders than if, as signatories of the Landscapers Contract, they can pay a lower wage to their plantsmen than their competitors who employ general construction laborers whose wages are prescribed in the Laborers Contract.

The plaintiffs argue that a challenge to the Department's determination would have been futile because most landscape contractors would be afraid to buck the Department, and if enough bowed to the new determination the wage in the Laborers Contract would *be* the prevailing wage. But that is wrong too, because if the plaintiffs' challenge succeeded, either as a direct challenge or as an affirmative defense in an enforcement action, the Department would be required to recalculate the prevailing wage. 735 ILCS 5/3-111(a)(5)-(6); *Hayen v. County of Ogle*, *supra*, 463 N.E.2d at 126; see also 820 ILCS 130/9.

Given these administrative and judicial remedies, we conclude that the Illinois legislature and the Illinois Department of Labor haven't delegated regulatory power to private parties (namely the signatories of the Laborers Union collective bargaining contract). But before engraving this conclusion in stone we need to address the lone case that might be thought to support the plaintiffs' position: *General Electric Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1457-59 (2d Cir. 1991). Having paid a lower wage to electrical workers than a wage deemed by the state department of labor to be the prevailing wage (for public projects) that had been fixed in collective bargaining agreements between a union and an association of electrical contractors, GE challenged as an unconstitutional delegation of governmental power to private entities the law under which the department had determined the prevailing wage. The court held that the challenge had prima facie merit:

> The two "adversary" parties [the union and the contractors association] set a relatively low rate for

electrical work done in the private sector in order (from the union's perspective) to make employment of union workers more attractive to employers, and (from the employers' perspective) to achieve lower labor costs for private sector employers. A higher wage rate for public work projects was agreed to in order (from the union's perspective) to make up some of the wages lost on the private sector work, and (from the employers' perspective) to give the unions higher wages without the employers incurring greater labor costs since the higher wages would be passed on to the taxpayers.

If this is in fact what occurred—and we express no view as to whether it did or did not—then neither side was forced to curb its self-interest, and the rates set in the agreement are potentially arbitrary because they reflect not the wage rates of an adversarial marketplace, but the wage rates in a setting skewed by the bargaining parties' knowing use of their agreement to achieve selfish ends. . . .

Thus, the Department's procedures seem not to involve the exercise of any discretion in setting prevailing wage and supplement rates. The state's insistence that it does not merely take whatever rates the unions submit, but sets the prevailing rate at that actually paid in the locality may well be the case, but we must take as true for purposes of this appeal GE's allegations regarding the actual procedure followed by the state.

This disputed fact is material because both collective bargaining agreements from which the rates were

> drawn explicitly provide for two wage rates, and bar application of the lower wage rate to public work projects. If this two wage rate system was collusively negotiated, and simply adopted *pro forma* by the state (without exercising any discretion) as the resulting wage rates, this would clearly establish an unconstitutional delegation of authority under the statute as applied.

*Id*. at 1457-59.

The court thus assimilated the case to ones we cited earlier in which a state or local government authorizes landowners to impair at will their neighbors' property rights. That is not the character of the action by the Illinois Department of Labor. It merely decided what the relevant category of workers on public landscaping projects was (namely laborers) and hence what collective bargaining agreement it should look to for determining the prevailing wage rate for workers in that category. The decision to look to the Laborers Contract rather than to the Landscapers Contract to determine the prevailing wage for plantsmen was reasonable. Even if they outnumber other laborers on most public landscaping projects, many of those projects are not subject to the Prevailing Wage Act, as we learn from a chart published on the Department's website: "Prevailing Wage Act: Coverage of Landscaping Activities," www.state.il.us/agency/idol/forms/pdfs/PWLandscapeRates.pdf (visited Jan. 16, 2012). For aught that appears, construction workers do most of the landscaping work on public projects that are subject to the Act, thus making their wage—the wage in

the Laborers Contract—the prevailing wage of landscape laborers (plantsmen).

Illinois's procedure is further distinguishable from New York's because of the 30-day deadline for challenging the Illinois department's determination of the prevailing wage. That deadline is proximate enough to the initial wage determination to make the challenge proceeding part of the wage-setting process rather than process belatedly bestowed after an unconstitutional delegation is complete.

AFFIRMED.