[Cite as *Internatl. Bhd. of Elec. Workers Local Union No. 8 v. Bd. of Defiance Cty. Commrs.*, 2013-Ohio-5198.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
DEFIANCE COUNTY

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL UNION NO. 8,

                                                     CASE NO. 4-13-05

    PLAINTIFF-APPELLANT,

    v.

BOARD OF DEFIANCE COUNTY            O P I N I O N
COMMISSIONERS,

    DEFENDANT-APPELLEE.

Appeal from Defiance County Common Pleas Court
Trial Court No. 11-CV-41393

Judgment Affirmed

Date of Decision: November 25, 2013

APPEARANCES:

    *Joseph M. D'Angelo* for Appellant

    *Jack Rosati, Jr. and Russell R. Herman* for Appellee

**ROGERS, J.**

{¶1} Plaintiff-Appellant, International Brotherhood of Electrical Workers, Local Union No. 8 ("Local No. 8"), appeals the judgment of the Court of Common Pleas of Defiance County granting summary judgment in favor of Defendant-Appellee, Defiance County Commissioners ("the County"), and denying Local No. 8's motion for summary judgment. On appeal, Local No. 8 contends that the trial court committed the following errors: (1) denying Local No. 8's motion for summary judgment and granting the County's motion for summary judgment; (2) finding that federal funds were used to pay both the principal and interest obligations on the bonds; and (3) finding that the Project was exempt from the application of Ohio Prevailing Wage Law under R.C. 4115.04(B)(1). For the reasons that follow, we affirm the trial court's judgment.

{¶2} On June 17, 2011, Local No. 8 filed a R.C. 4115.16(B) interested party prevailing wage enforcement action against the County, alleging violations of the Ohio prevailing wage law during a Defiance County building project at the Historic Jail Building ("the Project"). The County filed its answer on July 15, 2011. The following relevant facts were stipulated by both parties.

{¶3} The County began planning the Project in Fall 2009. The County then advertised for bids on the Project, initially stating that Ohio prevailing wage law would apply to the Project. On December 24, 2009, the County adopted

Resolution No. 09-12-848, which declared the entire area within the County as a "Recovery Zone." On February 4, 2010, the County issued County Building Improvement General Obligation Bonds, Series 2010 (Federally Taxable – Recovery Zone Economic Development Bonds) ("the Bonds") to finance the construction of the Project. The United States Treasury agreed to pay the County an amount equal to 45 percent of the interest payable on the Bonds, which triggered the application of the Davis-Bacon Act. Funding for the Treasury payments derived from the American Recovery and Reinvestment Act ("ARRA").

{¶4} On January 5, 2010, the County requested that each of the lowest bidders for the Project execute an acknowledgment stating that the provisions of Ohio prevailing wage law no longer applied, and that instead, the provisions of the Davis-Bacon Act applied to the Project. Each of the bidders executed the acknowledgments by January 14, 2010. These acknowledgments were then attached to the original construction contracts. On February 4, 2010, the Bonds were issued by the County and sold to Fifth Third Securities, Inc. The County deposited the proceeds from the Bonds into the County's Permanent Improvement Fund, which was used to pay for the construction of the Project.

{¶5} Meanwhile, the County deposited the Treasury's reimbursement payments into a Bond Retirement Fund in order to "extinguish its interest and principal obligations under the Bonds." (Docket No. 7, p. 4). Although no money

from the Bond Retirement Fund was transferred into the Permanent Improvement Fund, the funding for the Project was obtained from the Bonds that will be retired through the Bond Retirement Fund. Checks to pay Project expenses were linked to the Permanent Improvement Fund.

{¶6} The parties stipulated that the Davis-Bacon Act does not preempt the Ohio prevailing wage laws and that the Project was a "public improvement" as defined by R.C. 4115.03(C).

{¶7} On June 25, 2012, both parties filed competing motions for summary judgment on the basis of these stipulated facts. On April 23, 2013, the trial court granted the County's motion for summary judgment, denied Local No. 8's motion for summary judgment, and dismissed Local No. 8's complaint.

{¶8} Local No. 8 filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN DENYING LOCAL 8'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COUNTY'S MOTION FOR SUMMARY JUDGMENT.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN MAKING A FINDING OF FACT THAT DIRECTLY CONFLICTS WITH THE STIPULATED RECORD: THE PARTIES STIPULATED THAT FEDERAL FUNDS WERE USED SOLELY TO REIMBURSE A PORTION OF THE COUNTY'S INTEREST PAYMENT OBLIGATION ON THE BONDS IT ISSUED TO**

**FINANCE THE PROJECT, BUT THE COURT FOUND THAT THE FEDERAL FUNDS WERE USED TO PAY BOTH THE *PRINCIPAL* AND INTEREST OBLIGATIONS ON THE BONDS.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN HOLDING THAT THE PROJECT WAS EXEMPTED FROM APPLICATION OF OHIO PREVAILING WAGE LAW UNDER R.C. 4115.04(B)(1) WHERE FEDERAL FUNDS WERE NOT USED IN CONSTRUCTING THE PROJECT, BUT RATHER WERE USED SOLELY TO REIMBURSE A PORTION OF THE COUNTY'S INTEREST PAYMENT OBLIGATION ON THE BONDS IT ISSUED TO FINANCE THE PROJECT.**

{¶9} Due to the nature of the assignment of errors, we elect to address them together.

*Assignments of Error Nos. I, II, & III*

{¶10} In its first, second, and third assignments of error, Local No. 8 essentially argues that the trial court erred by granting the County's motion for summary judgment and denying its motion for summary judgment. We disagree.

*Standard of Review*

{¶11} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton*

*Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶12} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

*Federal and Ohio Prevailing Wage Laws*

**{¶13}** This matter implicates both the federal and Ohio prevailing wage laws. The Davis-Bacon Act, passed in 1931, requires that "contractors and subcontractors on federal construction projects pay qualified employees * * * the prevailing wage rate for their job classification as determined by the Secretary of Labor." *Frank Bros., Inc., v. Wisconsin Dept. of Transp.*, 409 F.3d 880, 882 (7th Cir. 2005); *see* 40 U.S.C. 3142(b); 23 U.S.C. 113; 23 C.F.R. 633.102. To show compliance with the Davis-Bacon Act, contractors and subcontractors who are subject to the federal wage provisions must give weekly payroll records to the Department of Labor. *Frank Bros*, at 882. In addition to complying with federal prevailing wage laws, on construction projects that have state and federal funding, contractors must also abide by supplemental state prevailing wage laws. *Id*. at 883.

**{¶14}** In Ohio, "[t]he prevailing wage statutes, R.C. 4115.03 through R.C. 4115.16, require contractors and subcontractors for public improvement projects to pay laborers and mechanics the so-called prevailing wage in the locality where the project is to be performed." *J.A. Croson Co. v. J.A. Guy, Inc.*, 81 Ohio St.3d 346, 349 (1998). Under R.C. 4115.03(C),

> "Public Improvement" includes all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a

contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof.

{¶15} However, under R.C. 4115.04(B), certain public improvements are exempt from R.C. 4115.03 through 4115.16. R.C. 4115.04(B) states, in relevant part:

> (B) Sections 4115.03 to 4115.16 of the Revised Code do not apply to:
>
> (1) Public improvements in any case where the federal government or any of its agencies furnishes by loan or grant all or any part of the funds used in constructing such improvements, provided that the federal government or any of its agencies prescribes predetermined minimum wages to be paid to mechanics and laborers employed in the construction of such improvements[.]

*Stipulated Facts*

{¶16} Local No. 8 contends that the trial court erred in making a finding of fact that was contrary to the stipulated record. Specifically, Local No. 8 argues that both parties stipulated that the federal funds are being paid to reimburse a portion of the County's interest payments exclusively, and did not go toward the payment of any of the principal balance.

{¶17} In making this argument, Local No. 8 relies on Stipulated Statement of Facts Nos. 16 and 23, which state:

> 16. The federal government's partial reimbursement to the County of the interest payments due on the Bonds in the County issued to finance construction of the Project triggered application of the Davis-Bacon Act (federal prevailing wage law) on the Project.

\* \* \*

> 23. The United States Treasury pays the County an amount equal to 45% of the interest payable on the Bonds. Funding for the United States Treasury's payments comes from the American Recovery and Reinvestment Act ("ARRA").

(Docket No. 7, p. 3-4). However, Local No. 8 omits discussion on Stipulated Statement of Facts No. 24, which states:

> 24. The County deposits the United States Treasury's reimbursement payments into a Bond Retirement Fund the County set up at Huntington National Bank to extinguish its *interest and principal obligations* under the Bonds.

(Emphasis added.) (*Id.* at p. 4).

{¶18} Stipulated Fact Nos. 16 and 23 do not state that the United States Treasury's reimbursement payments are *solely* or *exclusively* meant to pay the interest payments, as Local No. 8 argues. Indeed, in Stipulated Fact No. 24, Local No. 8 agreed that the Treasury's money is deposited in a bank account that was used to pay off both the interest *and* principal payments. Further, interest payments are associated with the cost of bonds, so ultimately Local No. 8 is making a distinction where there is no difference. Therefore, we find that the trial court did not err in finding that the federal funding was used to extinguish its interest and principal obligations under the Bonds.

*Preemption*

{¶19} Local No. 8 also argues that the trial court erred in finding that the Davis-Bacon Act preempted Ohio prevailing wage laws. While we agree with Local No. 8 that the Davis-Bacon act does not preempt state prevailing wage laws, we are unable to find where in the trial court's judgment it made a finding to the contrary. The trial court's judgment entry, in relevant part, states:

> [I]t is stipulated that, when AARA [sic] grant funding became involved, the [County] required compliance with the Davis-Bacon Federal Prevailing Wage requirements, which on its face would make the *statutory state prevailing wage exemption applicable*.
>
> * * *
>
> It is the determination of the court that under the circumstances where federal funds are deposited in a bond retirement account and used to pay principal and interest on bonds issued to generate funds for construction of a public project, *the statutory exemption provided applies*, and therefore, based on compliance with Davis-Bacon federal minimum wage requirements, the [County] is not required to also demonstrate compliance with state prevailing wage law.

(Emphasis added.) (Docket No. 17, p. 2-3).

{¶20} We fail to see how the trial court in any way implied that preemption was an issue in this case. The trial court never used the word "preemption" in its judgment entry and both parties stipulated that the Davis-Bacon Act does not preempt state prevailing wage laws. The trial court merely explained that because federal funding was involved for the construction of a public improvement,

-10-

compliance with the Davis-Bacon Act was required, which in turn made the exemption in R.C. 4115.04(B)(1) applicable.

*R.C. 4115.04(B)(1) Exemption*

{¶21} Local No. 8 finally argues that the trial court erred by finding that the County was exempted from the Ohio prevailing wage law under R.C. 4115.04(B)(1). According to Local No. 8, the funds that were actually used to construct the Project came from the proceeds of the sale of the Bonds, which were deposited in the County's Permanent Improvement Fund; it was the County's Permanent Improvement Fund that paid for the "actual" construction of the Project; thus, the federal funding, which was deposited into the Bond Retirement Fund, did not contribute to the actual construction of the Project. Like the trial court, we find that this argument is "contrary to reason and common sense * * *." (*Id*. at p. 4).

{¶22} The parties stipulated that the County issued the Bonds to finance the construction of the Project. With the proceeds of the sale of the Bonds, $2,308,910.18 was deposited into the County's Permanent Improvement Fund, which was used to construct the Project. The United States Treasury's payments were deposited into the Bond Retirement Fund, which, as discussed more fully above, was used to extinguish its principal and interest obligations under the

Bonds. Therefore, we are unable to find that the federal funding was not used in the construction of the Project.

{¶23} To avoid this result, Local No. 8 contends that the exemption found in R.C. 4115.04(B) does not apply because of the timing and the amount of the federal funds expended by the completion of the Project. We find this argument unconvincing. R.C. 4115.04(B)(1) specifically states that for the exemption to apply, the federal government may contribute "*all or any part* of the funds used in constructing such improvements * * *." Thus, it does not matter that federal funding only paid for a small portion of the entire Project by the time construction had ended.

{¶24} In support of its argument, Local No. 8 analogizes this matter to *State ex rel. Northwestern Ohio Bldg. & Constr. Trades Council v. Ottawa Cty. Improvement Corp.*, 122 Ohio St.3d 283, 2009-Ohio-2957. However, *Ottawa County* is plainly distinguishable. There, the project in dispute was not constructed by or for a public authority, but instead, was constructed by and for a private company. *Id*. at ¶ 23. Further, the project was financed by using both public and private funding. *Id*. at ¶ 4-6. The public funding went only towards the purchase of the real property, a building, and office equipment, while the private funding went towards the renovation of the building. *Id*. at ¶ 4. The Ohio

Supreme Court held that the project was not a public improvement, and therefore, not subject to Ohio prevailing wage laws. *Id.* at ¶ 24.

{¶25} Conversely, in this matter, the parties stipulated that the Bonds "finance[d] the construction of the Project." (Docket No. 7, p. 3). They also stipulated that the federal funding went into the same account used to extinguish both the principal and interest owed on the Bonds that were taken out to finance the construction of the Project. Therefore, federal funding was clearly used for the construction of the Project and *Ottawa County* does not control the disposition of this matter.

{¶26} In sum, we find that the federal funds were used in the construction of a public improvement, and therefore, the Project is exempted under Ohio prevailing wage laws under R.C. 4115.03(B). As such, it was proper for the trial court to grant summary judgment in favor of the County and to deny Local No. 8's motion for summary judgment.

{¶27} Accordingly, we overrule Local No. 8's first, second, and third assignments of error.

{¶28} Having found no error prejudicial to Local No. 8 in the particulars assigned and argued, we affirm the trial court's judgment.

***Judgment Affirmed***

**WILLAMOWSKI and SHAW, J.J., concur.**
**/jlr**

-13-